WHITE v. THE K. & D. M. R. Co.

1. **Railroads:** LIEN: JUDGMENT FOR PERSONAL INJURIES. The lien of a judgment for personal injuries against a railroad company is purely statutory, and the claim becomes a lien upon the road only when reduced to judgment. Following *The B. C..R. & N. R. Co. v. Verry,* 43 Iowa, 458.

2. ———: ———. RECEIVER. Pending the foreclosure of a railway mortgage the plaintiff commenced an action against the receiver in charge of the road to recover for personal injuries sustained through the alleged negligence of the receiver's employes, between the date of the foreclosure sale and the execution of the sheriff's deed thereon. After the receiver had appeared and answered in the action, a sheriff's deed was executed, and the receiver made final settlement and was discharged: *Held,* that the judgment subsequently rendered in the action against the receiver did not become a lien upon the property in the hands of the purchaser at the foreclosure sale.

*Appeal from Lee District Court.*

WEDNESDAY, OCTOBER 22.

THIS is a suit in equity. The defendants answered the petition, to which answer the plaintiff demurred. The demurrer was sustained, and defendant refusing to answer further a judgment and decree was entered as prayed in the petition. The facts averred in the pleadings, and upon which the court based its judgment and decree, are as follows:

"On the 16th day of February, 1857, the Keokuk, Ft. Des Moines & Minnesota R. R. Co., the name of which was sub-

sequently changed to Des Moines Valley Railroad Company, executed and delivered to Luther C. Clark and Samuel R. Curtis, trustees, a mortgage upon its railroad from Keokuk to Des Moines, with its appurtenances and franchises, including its real and personal property, to secure the payment of certain bonds issued by said railroad company. On the 1st day of October, 1868, the said railroad company executed to N. A. Cowdrey and W. S. Gilman, trustees, a second mortgage upon the part of the road above described, and a first mortgage upon the road from Des Moines to Ft. Dodge.

Gilman and Cowdrey brought a suit in the Circuit Court of Polk county to foreclose said second mortgage, making the trustees of the first mortgage parties defendant, who upon a cross-bill prayed the foreclosure of the first mortgage. On the 9th day of September, 1873, the court with the consent of the trustees and the company entered a decree foreclosing both of the mortgages. There was found to be due upon the first mortgage the sum of $2,720,400, and that said mortgage was a first lien on that part of the road from Keokuk to Des Moines; and that there was due upon the second mortgage $2,907,293.33, which was a subsequent lien on the railroad from Keokuk to Des Moines, and a first lien on the balance of the road. It was ordered that a sale of the road be made in two parcels, one from Keokuk to Des Moines and the other from Des Moines to Fort Dodge. It was further ordered that the purchasers at said sale should take the road subject to unpaid claims of any employes for labor in the operation of the road from the time of the first publication of the sheriff's notice of sale, to an amount not exceeding $100,000; but to provide a fund to pay such claims, and avoid, so far as might be, the imposition of said burthen on the purchasers of said road, Geo. B. Smyth was appointed special receiver of all the income and earnings of said railroad, from the time of the first publication of notice of sheriff's sale until the sale thereof, with absolute power as such special receiver to take and receive all such earnings and income during such period, and apply such earnings and income by him received to the payment of the current expenses of operating said road, to the purchase

of the necessary supplies to be used in operating said railroad during said period, and pay over any surplus to such person as the court might thereafter order. The said Smyth as receiver entered into the possession of the road, and operated the same during the period named in the decree. On the 8th day of October, 1873, the first mortgage bondholders entered into a contract whereby they made Hyman, Greer and Johnson a committee to act for them, and to purchase the road at sheriff's sale; that they should buy in their own name, and operate it as trustees until the said first mortgage bondholders could organize a new corporation to which the committee were to convey the railroad.

A special execution was issued upon said decree, and said railroad was duly advertised for sale, and on the 17th day of October, 1873, the sheriff sold the portion of the road from Keokuk to Des Moines to said Hyman, Greer and Johnson, for $1,175,000, which amount was paid in first mortgage bonds, and on the 10th day of November, 1873, the sheriff executed and delivered to said purchasers a deed in pursuance of said sale. The new organization—the Keokuk & Des Moines Railroad Company, the defendant herein, was organized on the 19th day of December, 1873, and on the 12th day of February, 1874, the said Hyman, Greer and Johnson conveyed the part of the road purchased by them at sheriff's sale to the defendant. On the 18th day of January, 1874, the first mortgage bondholders entered into an agreement with Hyman, Greer and Johnson, the purchasing committee, whereby it was agreed that the new company was to indemnify said purchasing committee for all liabilities by them incurred in making the purchase, and in and about the management, from the time the railroad came into their hands or under their control until its transfer to the Keokuk & Des Moines R. R. Company.

Smyth continued to hold the property and operate the road as receiver until the 10th day of November, 1873, when he delivered possession to the said purchasing committee.

On the 4th day of November, 1873, while the said Geo. B. Smyth was operating the said railroad, the plaintiff herein received a personal injury by reason of the alleged negligence

of the employes of Smyth in operating the road. He brought an action to recover damages for such injuries, making the said Smyth, as receiver, the Keokuk & Des Moines R. R. Company, and the Des Moines Valley R. R. Company, parties' defendant. Afterward plaintiff dismissed said action as to all of said parties excepting Smyth, receiver. Smyth appeared and answered, and in September, 1876, plaintiff recovered judgment against Smyth as receiver for $4,500. Prior to the recovery of this judgment, and after Smyth had appeared and answered, he settled his accounts as receiver, and paid out on the order of the Circuit Court the balance of the money in his hands, being $1,614.70, of which $1,049.56 was paid to the trustees of the first mortgage bondholders, and the remainder to the second mortgage bondholders.

It is claimed by the plaintiff that the judgment against Smyth, as receiver, should be paid by the defendant, and that the same should be deemed to be a lien on that part of the railroad which is situated in Lee county. The court below entered a judgment and decree for the plaintiff as prayed. Defendant appeals.

*Gillmore & Anderson*, for appellant.

*McCrary, Hagerman & McCrary* and *W. B. Collins*, for appellee.

ROTHROCK, J.—The pleadings abound in legal conclusions. It is averred in the petition that the receiver held and operated the road for the use and benefit of the bondholders, and, therefore, in the interest of the defendant, at the time the plaintiff received the injury for which he recovered a judgment against the receiver, and that the defendant is, therefore, liable to pay the judgment. It is also averred that Smyth, the receiver, was operating the road at the time the plaintiff received his injury by consent of the said purchasing committee. All the conclusions are explicitly denied by the answer, and we must determine the question upon the facts contained in the pleadings:

It is contended that the claim of appellee for injuries was

an equitable lien prior to the mortgage liens upon the railway property and franchises which were in the hands of the receiver at the time of the injury, and that the claim stands upon the "precise footing of claims against a receiver. arising during his receivership for labor and supplies in the operation of the road." This position is not tenable. It is true the first mortgage provided "that the expenses of the trust should be first borne by the mortgaged property." The expenses of the trust could by no possible rule of construction be held to include claims for personal injuries arising while the trust deed was in process of foreclosure, and the road in the hands of a receiver. The decree authorized the receiver to pay the current expenses of operating the road, and to purchase the necessary supplies to be used in operating the same.

1. RAILROADS: liens; judgment for personal injuries.

Now what is meant by an equitable lien for the injury complained of is difficult of comprehension. Liens for personal injuries sustained by the employes of railroad companies are created by statute in this State, and claims of this character only become liens when reduced to judgment. Code, Sec. 1309; *The B. C. R. & N. R. Co. v. Verry*, 48 Ia., 458. It is possible if the plaintiff had recovered his judgment before the receiver was discharged, and the receiver had paid the judgment, he would have been allowed to deduct the same from the funds in his hands, as was done in *Cowdrey v. Galveston R. R. Co.*, 93 U. S., 352.

But an action against the purchaser of the road, to establish the judgment as a lien as against the property purchased at the sheriff's sale, is quite another thing.

II.   Next it is insisted that the road and property purchased by the committee of the bondholders should be charged with the payment of the judgment because the receiver was the agent and receiver of the mortgagees, and was operating the road for the benefit of the mortgagees when the plaintiff was injured. This position cannot be maintained. The receiver was the officer or agent of the court. The property was in the custody of the law. His possession is the possession of the court for the benefit of whoever may ultimately be determined

to be entitled to its possession. High on receivers, section 134. *Wiswall v. Sampson*, 14 Howard, 52. This injury was received before the conveyance was made by the sheriff to the purchasing committee. The property was still in the custody of the court. The legal title was in the Des Moines Valley R. R. Company as mortgagor. Until the title passed by the conveyance, no action could have been maintained against the purchasers at the sheriff's sale for this injury. They neither had title nor control of the road, nor were in any manner responsible for the negligent acts of the receiver or his employes. In *Ohio & M. R. R. Co. v. Davis*, 23 Ind., 553, where an action was brought against the railroad company to recover damages for a personal injury resulting from the negligent operation of the road while it was under the control and management of a receiver, it was held that the company could not be held liable for the acts of a receiver appointed by the court. It seems to us if a judgment against the receiver for an injury by reason of the negligence of his employes is a lien upon anything it must be upon the earnings of the road which may be in his hands by virtue of his appointment as receiver, and we know of no case where any other or different rule has been adopted. No doubt the court which appoints and controls the receiver has the right to provide for the payment of all just claims arising out of the operation of the road by the receiver, and we believe the uniform practice is to allow such claims to be paid out of the funds in the receiver's hands. But no case has come to our notice where it has been held that the purchaser of the railroad and franchises takes the property charged with claims for personal injuries which accrued while it was in the hands of a receiver and before the title passed to the purchaser. On the contrary, in *The B. C. R. & N. R. Co. v. Verry*, *supra*, it is held that the purchaser takes the property free from any claims or causes of action of this character.

REVERSED.