## SLOAN v. THE CENTRAL IOWA RAILWAY CO.

1. **Railroads:** PERSONAL INJURY TO EMPLOYE: RECOVERY AGAINST RECEIVER: STATUTE CONSTRUED. A receiver, who is operating a railroad under the appointment and direction of a court, is included under the terms, "persons owning or operating railways," in contemplation of § § 1278, 1307 of the Code; and such receiver, or rather the property in his hands, is liable for the claim of an employe for injuries received through the negligence of co-employes.

2. ———: ———: RECOVERY AGAINST COMPANY TAKING FROM A RECEIVER THE ROAD BURDENED WITH THE LIABILITY. Where a railroad was for a time operated by a receiver, under the appointment and direction of the United States circuit court, and during this time a claim for damages arose in plaintiff's favor and against the receiver on account of personal injuries, and the court ordered the railway to be turned over to the defendant, upon condition that it would assume and pay all liabilities incurred while the road was operated by the receiver, and the defendant accepted the property with the conditions attached, *held* that it thereby became liable to the plaintiff on account of his claim for damages, and that an action thereon was properly brought against defendant.

3. **Verdict:** EVIDENCE TO SUPPORT: PRACTICE IN SUPREME COURT. This court will not overrule both the jury and the trial court upon findings based upon conflicting evidence.

4. **Railroads:** PERSONAL INJURY OF BRAKEMAN: CONTRIBUTORY NEGLIGENCE: QUESTION FOR JURY. Whether or not the plaintiff, a brakeman, was guilty of contributory negligence in not taking hold of the brake-rod, or something else, to steady himself, in anticipation of a "jerk," was a question for the determination of the jury from a consideration of all the circumstances.

5. ———: AUTHORITY OF CONDUCTOR TO EMPLOY BRAKEMEN: LIABILITY OF COMPANY. When a regular brakeman is absent, and the safe and proper management of the train requires it, the conductor has authority to employ a brakeman for the time being, who thereby becomes an employe of the company, and is entitled to recover for injuries received through the negligence of a co-employe.

6. ————: PERSONAL INJURY TO BRAKEMAN: SUNDRY RULINGS OF THE TRIAL COURT CONSIDERED AND APPROVED. The instructions given by the court, and the rulings upon the admission of evidence, and upon the submission of special interrogatories to the jury, and upon the special findings of the jury, being considered by the court, and found to be in harmony with the views already expressed in this case, are approved.

*Appeal from Poweshiek Circuit Court.*

SATURDAY, JUNE 16, 1883..

THE facts are sufficiently stated in the opinion.

*H. E. J. Boardman, J. H. Blair* and *A. C. Daily,* for appellant.

*H. W. Gleason* and *J. F. Lacey,* for appellee.

SEEVERS, J.—The Central Railroad Company of Iowa executed a mortgage to the Farmers' Loan & Trust Co., and, default having been made in the payment of the indebtedness secured, the trust company commenced an action in the United States circuit court to foreclose the mortgage, and therein asked for and secured the appointment of H. L. Morrill as receiver, who, as such, took possession of and operated the road. The receiver was operating the road on the sixth day of July, 1878, when, as the plaintiff claims, he was in the employ of the receiver as a brakeman, and was then injured by being run over by a train, because of the negligence of the engineer. This action, to recover damages sustained, was brought against the defendant, the receiver and the Central Railroad Company of Iowa. Neither the receiver nor the last named company appeared to the action, and no default or judgment was entered against either of them.

The mortgage was foreclosed, and the road and property embraced therein was sold by a master, and purchased by the Trust Company, to whom it was conveyed in trust for parties in interest. On the twentieth day of May, 1879, the

United States circuit court ordered and decreed that the trustee and receiver transfer and deliver full and absolute possession of all of said property, together with all additions thereto, to the defendant, and said court further ordered and decreed as follows:

"And it is further ordered that the lawful debts contracted by the receiver during the litigation, and the costs and expenses of such litigation, do constitute and are hereby made a first and paramount lien upon all said property, moneys, credits, and all additions thereto, to all other liens, and to the title acquired by the purchaser at the foreclosure sale and by the conveyance to the Central Iowa Railway Company; and since it is not desirable to further continue said property under the control of the receiver for the purpose of making net earnings for the payment of said debts, costs and expenses, and the creditors having been notified, and making no valid or satisfactory objection thereto, it is further ordered and decreed that all said claims, and all claims pending in this court, debts and liabilities, including the claims of attorneys and others heretofore referred to special master Rogers, and reported on by him, and still pending on exceptions, shall be presented to the said Central Iowa Railway Company for adjustment and settlement; and the said Central Iowa Railway Company is ordered and directed to pay the said debts, costs and expenses; and the creditors entitled thereto are hereby required to accept payment thereof, with interest at the rate of seven per cent per annum, in one year from the date hereof, and for the purpose of enforcing the payment thereof, if need be, this court will and does retain jurisdiction of said cause, for the purpose of enforcing said payment and the lien herein provided for, without other action or independent proceeding."

In accordance with this order and decree, the road and property were transferred to and accepted by the defendant. While the road was in charge of the receiver, the claim of the plaintiff for damages was presented to the circuit court

aforesaid, and permission asked to bring a suit against the receiver. It was referred to a master to take evidence, who made a report to the court, and, as claimed by the plaintiff, the claim was presented to the defendant and payment demanded, which was refused.

The circuit court aforesaid made an order that the "plaintiff be permitted to bring suit at law in this court, or in the district or circuit court of Iowa, on his said claim, against the Central Iowa Railway Company, (defendant herein,) the Central Railroad Company of Iowa, and H. L. Morrill, receiver; that, if suit is brought in the state courts, its judgments and orders be certified to this court."

Afterward, on motion of Morrill, so much of the order was rescinded as permitted the plaintiff to bring an action against him, on the ground that he was not personally liable, and, as he had been discharged as receiver, he had no property in his hands which could be made liable to the payment of any judgment that might be obtained. The defendant, among other things, pleaded that it was not a party to the action in which the orders aforesaid were made, and that it could not be made liable for the debts of the receiver, and that the claim of the plaintiff was not one of the debts or liabilities that the defendant under the orders aforesaid was required to pay. The defendant, at the proper time, and in every way possible, made proper objections to everything which tended to show its liability, but the same were overruled. The foregoing statement is deemed sufficient to fairly present the important question we are required to determine.

I. It is provided by statute that "every corporation operating a railway shall be liable for all damages sustained by any person, including employes of such corporation, in consequence of the neglect of agents, or by any mismanagement of the engineers or other employes of the corporation. All the duties and liabilities imposed upon corporations owning or operating railways by this chapter shall apply to all

1. RAILROADS: personal injury to employe: recovery against receiver: statute construed.

lessees or other persons owning or operating railways, as fully as if they were expressly named herein." Code, § § 1278, 1307.

Technically, it may be said that the road was in the charge of and under the control of the court, who, through or by its receiver, operated the road. As the court is neither a lessee nor person, it is said this action, under the statute, cannot be maintained.

While it is true that, in a general way, the road is in the charge of and under the control of the court, yet it is actually operated by the receiver, so far as the daily management of trains is concerned, and by what employes the same shall be run and controlled. The court cannot establish rules by which the receiver must be guided in such matters. As to these matters, the control of the receiver is just as absolute and unconditional as if he were the owner of the road. No action can be maintained against the court nor against its receiver, it will be conceded for the purposes of the case, unless the court so directs. But the receiver is a person, and, as the appointee of the court, is in fact operating the road. Usually railways are operated by corporations or their lessees. The statute includes them, and all "other persons owning and operating railways." The statute is remedial, and was evidently intended to include every possible person who was engaged in the operation of a railroad, whether for himself or for some other person. The court had control of the road for the time being for the persons or parties in interest, and was in fact having the road operated through its receiver for their benefit. We think the receiver was in fact operating the road, and the claim of the plaintiff was presented to the court by whom he was appointed, who investigated it and found it to be meritorious, and directed an action to be brought against its receiver for the purpose of having it judicially determined what amount was due, if anything. That the liability of the receiver is not personal may, possibly, be justly said. Any judgment obtained, however, could

be satisfied out of the property in his hands, if the court by whom the receiver was appointed should so direct. But this in no manner affects the right of the plaintiff to have his claim judicially established.

We think the receiver is within the statute, and may be charged, and a recovery obtained against him, as a person who is engaged in operating a railway.

Conceding this to be so, counsel maintain that it by no means follows that the defendant is liable.

II. It must be conceded that the claim of the plaintiff was not a lien on the property in charge of the receiver at the time it was transferred or conveyed under the order of the court to the defendant. *White v. The K. & D. M. R. Co.*, 52 Iowa, 97; *B., C. R. & N. R. Co. v. Verry*, 48 Id., 458; *Jeffries v. Moran*, 101 U. S., 285; and it has been held that a railroad corporation cannot be made liable for the negligence of a receiver or his employes. *The O. & M. R. Co. v. Davis*, 23 Ind., 553. This last ruling is based on the thought that the receiver cannot be regarded as the agent of the corporation, and we think the receiver in the case at bar was not the agent of the defendant. We incline to think that the latter cannot be held liable, unless the property in the hands of the appellant can, under the order of the court, be charged with the payment of this claim. The order made by the court is exceedingly broad, and includes "claims, debts and liabilities." Against whom? The answer must be— the receiver, or property which in his hands was liable for the payment of the plaintiff's claim, debt or liability. We have determined that the receiver, or rather the property in his charge, was liable for the payment of the plaintiff's claim. The appellant, therefore, received the property charged with this liability. If it had been made a condition in the order that appellant, before the property was transferred or conveyed to it, should execute a written obligation binding itself to pay this claim, and it had done so, its liability, we think, would not be doubted. There would have been a sufficient consideration

*2. ——: ——: recovery against company taking from a receiver the road burdened with the liability.*

for the promise. What was done in legal effect amounts to the same thing. The jurisdiction of the court must be conceded. It had possession of the road through its receiver, and, during the time it was operated by the receiver for the court, a supposed liability to the plaintiff occurred. The court, in substance, said to the appellant: " We will discharge the receiver and place the road, and all property and rights connected therewith, in your possession, and vest you with the legal title thereto, provided you will assume and pay all liabilities incurred during the time the road has been operated by the receiver." The appellant accepted the road upon the conditions annexed: There was an offer and an acceptance. Ordinarily, this is sufficient to constitute a contract. Whether there was a valid contract or not is not material, because the appellant cannot retain the property and repudiate the conditions. If the appellant was entitled absolutely to the property, it should not have accepted, but contested by appeal or otherwise the legality of the conditions. It is true, the appellant was not a party to the action of foreclosure, but it became a party to the order when it accepted the property. Whether the order of the court was valid or not, we have no occasion to determine in this collateral proceeding, because its validity is not assailed, and possibly could not be successfully, for the reason that appellant's possession, if not its title, is based thereon. We think the plaintiff is entitled to recover of the defendant. Whether, or in what manner, the judgment can be enforced, is not before us.

III. The plaintiff was a brakeman on a freight train, and he was directed by the conductor to cut off the four rear cars of the train while it was in motion. To enable him to perform this duty, it was necessary to reverse the engine, so that the rear portion of the train would move faster than the forward part thereof, and thus produce the necessary slack to enable the plaintiff to pull the pin which coupled the cars together. It was the duty of the engineer to keep the engine reversed

Sloan v. The Central Iowa R'y Co.

until the plaintiff signaled him to go ahead. When pulling the pin, the plaintiff stood on the rear of the car in front of those which were to be detached, which was his proper place. The negligence which, it is alleged, caused the accident, was that of the engineer, who, as claimed, started the engine ahead before the plaintiff had given him the requisite signal, and this caused the plaintiff to be thrown from the car, and he fell on the track, and the four rear cars passed over a portion of his body. The appellant insists that the plaintiff gave the signal to the engineer, and that the accident was caused by his own negligence. The plaintiff testified that he did not give the signal, and the jury, in answer to a special interrogatory, so found. The conductor, Langdon, a brakeman and the engineer testified that the plaintiff did give the signal to go ahead. It may, therefore, be said that the evidence is conflicting, but we are unable to say that the plaintiff is not worthy of belief, when both the jury and the court below must have concluded that he was. If he was not, the jury should not have found as they did, and the court should have set aside the verdict and granted a new trial. In substance, we are asked to disbelieve the plaintiff and give credence to the evidence of the witnesses for the defendant. We do not have these witnesses before us, and cannot, therefore, test their credibility as well as the jury or the circuit court. Their opportunity to do so was much better than ours. If the jury believed the plaintiff, the verdict is right, and they must have done so. Some witness was no doubt mistaken. It is not our province to overrule both the jury and the circuit court in the conclusion reached as to who was mistaken, when all the facts before them are not before us.

IV. Whether the plaintiff was guilty of contributory negligence depends upon whether he used due precaution at the time and directly after he pulled the pin. It is said that he should have taken hold of the brake-rod, or wheel, or something else, to steady himself in anticipation of a "jerk." We think this was a question for the jury. We cannot

4. RAILROADS: personal injury to brakeman: contributory negligence: question for jury.

say as matter of law that it was the duty of plaintiff to do as it is claimed he should have done. No positive duty was enjoined on him, but, under the circumstances, it was a matter of judgment and discretion on his part, which the jury have found was properly exercised.

V. It is said that the plaintiff was not an employe of the receiver, but an intermeddler, and therefore he cannot recover. The undisputed facts are that one Voorhees was a brakeman in the employ of the receiver, and he desired to have a rest for a week or more, and the plaintiff took his place on the train, with the knowledge and consent of the conductor, on the first day of July, and continued to perform the duties of brakeman until the sixth day of said month, when he was ordered by the conductor to perform the duty in discharging which he was injured. The conductor testified that to properly manage the train two brakemen were required, and that there was but one other on the train besides the plaintiff. This evidence is not controverted. It does not clearly appear that the receiver or any of his employes, other than those on the train, had knowledge that the plaintiff was acting as brakeman. An intermeddler is a person who officiously intrudes into a business to which he has no right. The distinction between an intermeddler and a trespasser is not in any case very great. Under the circumstances of this case, if the plaintiff was an intermeddler, he was a trespasser. But, as he was on the train, and discharged the duties of brakeman for six days with the knowledge and consent of the conductor, he was not either. The train, when passing between stations and distant from any other officer, is in charge of the conductor, and he has authority to eject such persons therefrom. So far from so doing, the conductor availed himself of the services of the plaintiff, and required him to perform duties which were necessary and essential to the safe operation of the train. The regular brakeman was absent, and it is immaterial whether with or without cause. The conductor con

*5. ———: authority of conductor to employ brakemen: liability of company.*

sented that the plaintiff should perform his duties. We think, when the regular brakeman is absent, and the proper and safe management of the train so requires, the conductor has authority to supply the place of the absent brakeman, and, for the time being, such person is an employe of the conductor's principal. Of necessity, it seems to us, the conductor must have such authority.

Counsel for the plaintiff cite and rely on *Everhart v. The T., H. & I. R. Co.*, 4 Am. and Eng. R. R. Cases, 599; *Kelly v. Johnson*, 128 Mass., 530; *Sherman v. H. & St. J. R. Co.*, 72 Mo., 62; *Snyder v. R. R. Co.*, 60 Id., 413, and *Flower v. Pa. R. Co.*, 69 Pa. St., 210. In none of these cases was the person injured on the train, engaged in the performance of any duty, with the knowledge of any one occupying the same relation to the principal as the conductor of the train in question did. As bearing, at least somewhat, on the same question in principle as that under discussion, see *Wilton v. Middlesex R. R. Co.*, 107 Mass., 108.

VI. It is insisted that the court erred in permitting evidence to be introduced tending to show that the conductor hired the plaintiff, and what the conductor said at that time. This evidence was not material or prejudicial, for the reason that, on the undisputed facts, the plaintiff was entitled to recover. It is further insisted that the conductor did not have authority to hire the plaintiff. It is true, no such power was conferred, nor was the conductor prohibited from so doing, should an emergency arise. This, however, is immaterial, because, as we have held, an implied authority existed.

*6. ——: personal injury to brakeman: sundry rulings of the court considered and approved.*

VII. It is said that the court should have sustained a motion for judgment for the appellant on the special verdict. This thought is largely based on the eleventh special finding, which is as follows: "State what opportunity, if any, plaintiff had of taking hold of or supporting himself that he did not avail himself of." The jury an-

*THE SAME.*

swered as follows: "We think the end of the board cai was within reach, but plaintiff had no opportunity to avail himself of it after the jerk came." This finding is consistent with the general verdict. The theory of the plaintiff was, and the jury have so found, that the train started without being signaled to do so, and the "jerk" came sooner than the plaintiff expected. As he did not give the signal, he had reason to believe there would be no "jerk." He, therefore, was not required to take hold of anything till the time arrived when there would be danger if he did not do so. It must be remembered that the train was, for the time being, under the control of the plaintiff, and he had the right to act in accordance with this fact.

Counsel for the defendant in this connection discuss the evidence, and maintain that there was no unusual "jerk," and that if there was it did not occur until after the plaintiff gave the signal to go ahead. In relation to these matters, it is deemed sufficient to say that there was a conflict in the evidence, and therefore we cannot interfere.

VIII. It is urged that the court erred in giving the first, second and third paragraphs of the charge. The instructions above named are in accord with the views hereinbefore expressed, and therefore are not erroneous. THE SAME. The modification of the fifth instruction asked was necessary to make it accord with the second paragraph of the charge. At the request of the appellant, the court instructed the jury that, if they believed that the plaintiff or any witness had sworn falsely as to any material question, they might wholly disregard his evidence, and refused the tenth instruction, which substantially repeated the same proposition. This does not constitute reversible error. For the reason heretofore stated, the court did not err in refusing the eleventh and thirteenth instructions asked by appellant.

IX. The court did not err in modifying the ninth special interrogatory propounded to the jury at the request of appellant. The interrogatory asked was as follows: THE SAME. "Who employed the plaintiff?" To which the

court added: "And how was the employment made?" In the view we have taken of the case, the interrogatory as asked might have been refused, because the fact sought to be elicited was immaterial, and this is also true as to the modification, and therefore the appellant was in no manner prejudiced by the action of the court.

X. It is said that the court erred in not fully stating the issues to the jury, and in not "instructing fully upon the question of contributory negligence." THE SAME. We think the issues were fully and fairly stated to the jury, and the court said to them that, before the plaintiff could recover, he must satisfy them "that the plaintiff did not by his own fault or negligence himself contribute to his injury." The point urged is not, therefore, well taken.

XI. We deem it unnecessary to extend this opinion by stating at length our reasons for holding that the court did not err in the admission or rejection of evidence, THE SAME. in refusing to set aside the special findings, or in refusing to set aside the general verdict and to grant a new trial, because what we have said sufficiently indicates, we think, that none of the objections are well taken.

We have endeavored to consider, and believe we have, all the material errors assigned which have been discussed by counsel. The case has been ably tried both in this court and the court below, and the appellant has not failed because of a want of zeal and ability on the part of counsel.

AFFIRMED.