## WINBOURN'S CASE.[1]

### MISSOURI PAC. RY. CO. v. TEXAS PAC. RY. CO.

#### (*Circuit Court, E. D. Louisiana.* December 30, 1886.)

RAILROAD COMPANIES—LIABILITY OF RECEIVERS—PERSONAL INJURIES.

Where the affairs of a railway company have passed into the hands of receivers, who are operating the road under the direction of the court, having exclusive charge of its management and of the employment of operatives and employes, the entire control of the company having passed to the receivers as fully as it was before exercised by the officers of the road, the receivers may be held answerable in their official capacity for injuries sustained in the same manner that the corporation would have been liable.[2]

In Chancery. In the matter of Matthew B. Winbourn, praying for compensation for personal injuries. On exceptions to master's report.

By the master's report it appears that between 1 and 2 A. M. of the thirteenth day of January, 1886, and near Greenwood station, Louisiana, three Shreveport passengers, the brothers Winbourn, on a train of defendant company, running about 10 or 12 miles an hour, were occupants of a second-class coach, and bound for Woodland, Texas, when said coach was derailed, and overturned, with a baggage car, by reason of a rail which, upon examination, was found to be bad, rough, and old iron, whence a piece about six feet long had been newly broken; that the engineer, upon feeling the jar of the accident, immediately applied the air-brakes, and cut off steam, to arrest the progress of the train, and, assisted by a brakeman, having opened with an axe the door of said second-class car, and released the passengers and the train conductor therein, steamed to the next (Wasskom) station, and telegraphed thence to Marshall for the company's physician, who arrived at the wreck three hours after it occurred, examined and ministered to the said Winbourns, among other injured persons, and made tender to them of medical care at the Marshall hospital of the defendant company, which tender was declined, as they chose to continue their journey, and did so, after a delay of about eight hours at the wreck; that Matthew B. Winbourn, 26 years of age, disclosed there no visible injury, save a slight arm bruise, but complained of a pain in his left side and back to the railway phy-

---

[1] Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

[2] See note at end of case.

sician, who examined his side, and does not recall having examined his back; that he deposes that, with the overturn of the car, he jumped from his seat, and was thrown upon his face, sought to rise, found himself disabled in the small of the back, and soon after pulled himself up by the side of the car; that the suffering in that part of his person incapacitated him from work for about two months, when on the tenth of March, 1886, he was wholly prostrated for 21 days, and since that time continuous pains in his back have increased his incapacity for labor, and extended up to his chest; that his physician at Woodland, Texas, (Dr. Harris,) found him, when prostrated in March, suffering from a shock caused by contusion of the spinal marrow, and in the first stage of pneumonia, no similar case of which latter ailment was then in witness' practice; that said physician arrested this pneumonia, ascribes it to a bruise received at the wreck, and pronounces the disorganized condition of the spinal marrow a permanent injury, and contributive both to mental aberration, which said Winbourn at times exhibits, and to his speedy death; that, in the experience of the railway physician, (Dr. C. A. Smith,) paralysis will, in all cases, develop in the degree of the shock to the spine; that, as to Matthew B. Winbourn, the special injury sustained is adequately shown by an intelligent physician to have been due to said tort as the proximate cause, by the company physician to be an ordinary and natural consequence developed by it, and is of a serious and painful, if not fatal, character, beyond medical arrest; that the injury, as recited, to Matthew B. Winbourn, is a permanent physical disability, and entitles him to recover from the date of its occurrence, and for its probable continuance, (*Houston & T. C. R. Co.* v. *Bochns*, 57 Tex. 152; *Texas & Pac. R. Co.* v. *O'Donnell*, 58 Tex. 27;) and in view of his age, occupation, the presumable value of his past services, his blended mental and bodily pain, and his cost for medical care, the master recommends an allowance of $2,000.

*John H. Kennard, Jr.*, for Winbourn.

*W. W. Howe*, for receivers.

PARDEE, J. This report of the master is sustained in all respects by the evidence in the case. In the record of the main case, there is other evidence as to the condition of the road-bed and track at the place where the accident to Winbourn occurred which would seem to fix the responsibility upon the receivers as common carriers of passengers, unless a different rule prevails with them from that to which common carriers are generally subjected, as to which see High on Receivers, § 395, and cases there cited. The receivers took possession of the railway property December 16, 1885, prior to the accident. In February, 1886, subsequent thereto, they made a report to the court of the condition of the entire property, in which they advise the court, in relation to that part where the accident to Winbourn occurred, as follows: " That portion of this division between Shreveport junction and Jonesville is in very bad condition, the rails being old, worn out chain iron, which have been repeatedly repaired and patched, the track now being absolutely unsafe." It might, perhaps,

have been better to have offered this report before the master, but I do not think it was necessary, as it is a part of the record, and within the judicial knowledge of the court. At all events, if the case required it, I should deem it my duty to recommit the matter to the master, so that it might be offered. As to the amount of compensation, the sum allowed is not excessive, as the evidence shows that the injury to Winbourn was severe, disabling, and permanent.

Let the exceptions to the master's report be overruled, and the report confirmed.

### NOTE.

RECEIVER—ACTION AGAINST. Whether or not an action for a railway injury can be maintained against the receiver of the company in whose employment it occurred, was questioned in Smith v. Potter, (Mich.) 9 N. W. Rep. 273. But, under the provisions of the Iowa Code, an action may be maintained against the receiver of a railroad appointed by a circuit court of the United States, by an employe of such railroad who has been injured by reason of the negligence of a co-employe thereof; and where the property of the railroad is, by order of the court, transferred to the receiver, subject to all "claims, debts, and liabilities," such property in his hands is liable for the payment of such claims for damages. Central Trust Co. v. Sloan, (Iowa,) 22 N. W. Rep. 916; Sloan v. Central Iowa Ry. Co., (Iowa,) 16 N. W. Rep. 331. Where a demand against a receiver does not involve the administration of the trust committed to him, but arises from his having taken unlawful possession of property not included in the trust, a suit will lie against him personally as for a trespass, even though he took possession of such property under an order of court. Curran v. Craig, 22 Fed. Rep. 101.

The railroad company is not liable for injuries committed while the road was in the hands of the receiver, as it was out of the possession of the property, and had no control over it. Davis v. Duncan, 19 Fed. Rep. 477. But in Illinois it was held that the fencing act authorizes an action for the failure to fence against either the owner of such road or the person actually operating it. An action will therefore lie against the company owning an unfenced road, although it is in the hands of a federal receiver. Ohio & M. R. Co. v. Russell, 3 N. E. Rep. 561.

A receiver, as such, is not personally liable for the torts of his employes. The proceeding against him is in the nature of a proceeding in rem, and renders the property in his hands, as such, liable for compensation for such torts. Davis v. Duncan, 19 Fed. Rep. 477. But a judgment against a receiver for personal injuries, recovered after the receiver had settled his accounts, although the action was commenced pending the receivership, was held to create no lien against the property which could be enforced against the purchaser. White v. Keokuk & D. M. Ry. Co., (Iowa,) 2 N. W. Rep. 1016.

See, also, Lehigh, C. & N. Co. v. Central R. Co., (N. J.) 8 Atl. Rep. ——.