J. H. BEESON *et al.* v. HARRY E. BUSENBARK.

1. RAILROAD COMPANIES — *Liability* — *Statute, Construed.*   Chapter 93, Laws of 1874, entitled "An act to define the liability of railroad companies in certain cases," (Gen. Stat. of 1889, ¶ 1251,) applies to every railroad company organized in this state and to every railroad company doing business in this state; but its provisions do not include firms, partnerships or individuals having servants or employés engaged in work upon the road or trains of a railroad corporation.

2. PARTNERSHIP, *When not Within Statute.*   A firm or partnership composed of private persons, not being a railroad corporation or a *de facto* railroad corporation, having a sub-contract to construct a part of the road of a railroad corporation organized under the laws of this state, and operating cars and trains on the road in the prosecution of their work, and having servants and employés at work upon the road and in charge of their trains, are not within the terms of chapter 93, Laws of 1874. (Gen. Stat. of 1889, ¶ 1251.)

*Error from Saline District Court.*

THE opinion states the facts.   Judgment for plaintiff *Busenbark*, on January 8, 1887.   The defendants, *Beeson* and another, bring the case here.

*H. M. Jackson,* for plaintiffs in error.

*Garver & Bond,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: This was an action in the court below for damages for personal injuries received by Harry E. Busenbark while in the employ of the defendants, Beeson & Selden. The jury returned a verdict for the plaintiff for $12,000, and judgment was entered for that amount against the defendants. They complain, and bring the case here.

It appears from the record that the Kansas & Colorado Railroad Company—an auxiliary of the Missouri Pacific Railway—is a corporation organized under the laws of this state, and doing business as a railroad company in this state. W. V. McCracken & Co. were the original contractors with the railroad company for the construction of its road through Saline, McPherson, Rice, Barton, and other counties of the state. McCracken & Co. sub-let the construction of the road to Beeson & Selden between Salina and the east line of Ness county. McCracken & Co. were to furnish all the locomotives, not to exceed three, and cars, including boarding-cars, for the use of Beeson & Selden in carrying out the contract. Beeson & Selden were to receive all material at Salina and transport the same at their own cost and expense, including all unloading, loading, and reloading of such material, under direction of the engineer in charge, and as he should deem necessary. After fifteen miles of track had been laid from Salina west, Beeson & Selden sub-let a portion of the work to Bracey & Harris. Bracey & Harris were to do all work in the track-laying, and to load and unload material, but Beeson & Selden were to transport the material and provide the train service. Beeson & Selden employed and paid the trainmen, including the plaintiff. Trains were operated on the road by Beeson & Selden. About October 25, 1886, the Missouri Pacific Railway Company began running trains over the road between Salina and Geneseo. Beeson & Selden re-

tained their own trains in completing the construction of the road. On October 27, 1886, just after dark, Harry Busenbark, a fireman in the employ of Beeson & Selden, while at Geneseo with his engine, getting ready to go with a train of cars to Salina after material, under the order of his engineer, went under his engine for the purpose of cleaning the ashbox. While in that position another train, operated by Beeson & Selden, was backed against the train to which the engine was attached under which Busenbark was cleaning the ashbox. This caused the engine to move. Busenbark's foot was crushed by one of the wheels of the engine. Subsequently it was amputated.

The petition alleged and the evidence tended to prove that a brakeman, or employé, of Beeson & Selden, whose duty it was to attend to the displaying of warning lights, failed to display any light or signal at the end of the train against which the other one backed. The petition alleged and the evidence tended to prove that both trains were negligently handled by the employés in charge thereof, and that the collision was caused by the negligence of such employés, as well as the failure to display any warning lights or signals. The petition alleged that J. H. Beeson and H. P. Selden were partners as Beeson & Selden in the work of construction. The petition nowhere alleged that Beeson & Selden were a railroad company, organized under the laws of this state, or any other state, or that they were a *de facto* railroad company. The evidence upon the trial did not tend to show that Beeson & Selden were a railroad company of this state, or of any other state. The court, among other instructions, gave the following:

"If the defendants were, at the time of the injury complained of, operating the Kansas & Colorado Railroad, or running trains upon said road for the purpose of carrying construction material, as well as freight and passengers when offered, not connected with the road, they would be liable under the statute for any injury which one employé of defendants might receive because of the negligence of another employé, without regard to who or what such negligent em-

ployé may be. The statute reads as follows: 'Every railroad company organized or doing business in this state shall be liable for all damages done to any employé of such company in consequence of any negligence of its agents, or by any mismanagement of its engineers, or other employés, to any person sustaining such damages.' And in order to be doing the business of a railroad company, and to be liable under this statute, it is not necessary that they should hold themselves out to be common carriers, or that they should be required to carry all freight and passengers presented. It is the character of the work done, rather than the particular manner in which it is done, or the quantity done, that should determine this question. Neither is it necessary that defendants should have absolute control and management of the road. It is sufficient that they actually operate trains upon the road, either by themselves, or with the coöperation of others."

This instruction was not applicable under the petition or the facts disclosed upon the trial, and therefore was erroneous. Not only was it erroneous, but it was greatly prejudicial to the defendants. The statute referred to was passed in 1874. Its title is, "An act to define the liability of railroad companies in certain cases." The statute so far modifies and changes the common law that a servant or employé of a railroad company may maintain an action against such railroad company for any injury received while in the line of his employment, through the negligence of a fellow-servant or employé engaged with him in the same common work of the master or employer, unless such injured servant or employé has himself been guilty of negligence or want of ordinary care, which has directly contributed to produce the injury complained of. Previous to the statute of 1874 the rule of law which prevailed in this state exempted from liability all employers, including railroad companies, for injuries to their employés caused by the negligence or incompetency of a fellow-servant, unless they had employed such negligent or incompetent servant without proper inquiry as to his qualification, or had retained him after knowledge of his negligence or incompetency. (*Dow v. Railway Co.*, 8 Kas. 642; *Railway Co. v.*

*Salmon,* 11 id. 83; 24 Am. Law Rev. No. 2, 175.) This was the rule of the common law. But this rule of the common law was abrogated by the statute of 1874 so far as it related to railroad companies organized in this state, or railroad companies doing business in this state. The statute of 1874 fixes a new liability upon railroad companies organized in this state and railroad companies doing business in this state. This statute is in derogation of the common law; therefore, it is not to be extended by implication or construction.

"As a rule of exposition, statutes are to be construed in reference to the principles of the common law. For it is not to be presumed that the legislature intended to make any innovation upon the common law, further than the case absolutely required. The law rather infers that the act did not intend to make any alteration, other than what is specified, and besides what has been plainly pronounced; for if the legislature had had that design, it is naturally said, they would have expressed it."

Chancellor Kent says:

"This has been the language of courts in every age, and when we consider the constant, vehement and exalted eulogy which the ancient sages bestowed upon the common law as the perfection of reason, and the best birthright and noblest inheritance of the subject, we cannot be surprised at the great sanction given to this rule of construction." (Potter's Dwarris, Stat. 185.)

The statute of 1874 is to be construed strictly. It cannot apply to masters or employers not within its terms. Neither can it be construed to give protection to persons not in the employ of a railroad company. The statute has reference to servants and employés of railroads, not to servants or employés of other masters, companies, or corporations. The statute does not include partnerships, or persons in the employ of partnerships; it does not include construction companies, or persons in the employ of construction companies; it does not include bridge companies, or persons in the employ of bridge companies, although such partner-

*2. Partnership, when not within statute.*

*1. Railroad companies—liability—statute, construed.*

ships and companies construct railroads, build bridges, and do other public work.

Statutes similar to the one referred to, changing the common-law rule between masters and servants, employers and employés, are in force in a number of the states of this country; but with one exception, these statutes are all confined in their operation to railroad companies. The single exception, the Rhode Island statute, embraces only the cases of common-law carriers. (7 Am. & Eng. Encyc. of Law, 859; 24 Am. Law Rev. No. 2, 1890, p. 181.)

The legislature has full authority to extend the operation of the statute to all corporations, companies, masters or employers of every occupation or business. It has not seen fit to do so. It might very properly have extended the operation of the statute to all partnerships, masters, or others engaged in the work of operating trains upon railroads, or in constructing railroads, or other like work. It has not done so.

In various opinions of this court, we have frequently held that the statute applied to persons engaged in the hazardous work of operating trains upon a railroad; but in all those cases, we had reference to the employés of a railroad company organized in this state, or of a railroad company doing business in this state. (*Railway Co. v. Haley*, 25 Kas. 35; *Railway Co. v. Mackey*, 33 id. 298; *Bucklew v. Railway Co.*, 21 N. W. Rep. 103.)

Again, we have held that when a railroad is being constructed, and is in the exclusive possession of and operated by a contractor for its construction, and the railroad company at the time the injuries complained of are committed has no control thereof, such company is not liable for the damages resulting from the operation of such railroad. (*Railway Co. v. Fitzsimmons*, 18 Kas. 34; *Railroad Co. v. Willis*, 38 id. 330.)

If the statute of 1874 were extended so as to include the firm of Beeson & Selden and their employés, it must also be extended so as to include every firm, partnership, contractor, or private person having servants or employés at work on

the track or in the yard of a railroad company. (*Union Trust Co. v. Thomason*, 25 Kas. 5; *Railroad Co. v. Harris*, 33 id. 416; *Railroad Co. v. Koehler*, 37 id. 463.) The statute does not go so far. The courts construe laws, but do not make them.

The trial court attempted to fix a liability on Beeson & Selden under a statute which has no application to them as masters or employers — they not being a railroad company organized in this or any other state. The general rule is, that he who engages in the employment of another for the performance of specified duties and services for compensation, takes upon himself the natural and ordinary risks and perils incident to the performance of such services. The perils arising from the carelessness and negligence of those who are in the same employment are no exception to this rule. If Beeson & Selden used due diligence in the selection of competent and trusty servants, and furnished them with suitable means to perform the service in which they employed them, and did not retain negligent or incompetent servants after knowledge or notice of their negligence or incompetency, they are not answerable to Busenbark or any other employé for any injury received by them, or either of them, in consequence of the carelessness of any co-servant or coëmployé while they were engaged in the same service. Outside of the statute, Beeson & Selden were required to assume the duty toward their servants and employés of exercising reasonable care and diligence in providing them with a reasonably safe place at which to work, and also in furnishing them proper means or instrumentalities, such as engines, cars, oil, lights, etc., to work with. (*Railroad Co. v. Holt*, 29 Kas. 152; *Railroad Co. v. Moore*, 29 id. 632; *Railroad Co. v. Fox*, 31 id. 586; *Railroad Co. v. Weaver*, 35 id. 434; *Railroad Co. v. Dwyer*, 36 id. 69; *Railroad Co. v. Wagner*, 33 id. 660; *Railroad Co. v. McKee*, 37 id. 592.)

As the instruction complained of did not place the liability of Beeson & Selden upon the duty of master and servant under the common law, but solely upon a statute which has no application to them, and applies only to railroad companies

organized in this state and to railroad companies doing busi-
ness in this state, the case was not correctly submitted to the
jury.

The judgment of the district court must be reversed.

All the Justices concurring.