HENRY C. ROUSE, *as Receiver de bonis non of the Missouri, Kansas & Texas Railway Company*, v. PETER REDINGER.

RECEIVERS OF RAILROADS—*Liability for Stock Killed.* The act entitled "An act relating to the killing or wounding of stock by railroads," being chapter 94, Laws of 1874, applies to receivers operating a railway under an appointment of a court of competent jurisdiction; and the same liability attaches to such receivers for the killing or wounding of stock in the operation of the railway as does to the company or corporation, the assignee or lessee of such railway company or corporation. (*Rouse v. Harry*, 40 Pac. Rep. [Kas.] 1007.)

MEMORANDUM.—Error from Bourbon district court; S. H. ALLEN, judge. Action by Peter Redinger against Henry C. Rouse, as receiver of the Missouri, Kansas & Texas Railway Company. Judgment for plaintiff. Defendant brings the case to this court. Affirmed. Opinion filed September 6, 1895.

The statement of the case, as made by JOHNSON, P. J., is as follows :

This action was commenced originally before William Margrave, a justice of the peace in the city of Fort Scott, Bourbon county, Kansas. The bill of particulars alleges that Geo. A. Eddy and H. C. Cross had been appointed by the United States circuit court as receivers of the Missouri, Kansas & Texas Railway Company, and that the railway company owned the railroad running through Bourbon county, Kansas, and on or about the 29th day of August, 1889, the plaintiff, Peter Redinger, was the owner of a red roan cow of the value of $75, and, about that date, the receivers, without any fault on the part of the plaintiff, ran over, against, and killed said cow with their engine and cars in operating said railroad, and at a place near Fort Scott, in said county, on said railroad where the railroad was not fenced, and where it was the duty of the defendants to have it fenced ; that more than 30 days prior to the filing of the bill of particulars the plaintiff, Redinger, notified the said defendants of the killing of the cow, and made demand for the payment therefor, which payment the receivers failed and refused to make, and alleges that it was necessary for the plaintiff to employ attorneys to prosecute his suit at an expense of $75, and that the attorneys' services

were reasonably worth that sum, and demands judgment against the receivers of said railway company for the sum of $150, with interest at 6 per cent., from August 29, 1889. Service was made on the agent in charge of the railway company's depot at Fort Scott, Kas., in accordance with an order made by Judge Foster of the United States district court for the district of Kansas. Trial was had before the justice of the peace, and judgment rendered for the plaintiff below. The case was taken to the district court on appeal, and there tried on an agreed statement of facts in words and figures as follows :

"It is hereby agreed and stipulated, that this case shall be tried upon the following facts, which are all of the facts in the case :

"1. The Missouri, Kansas & Texas Railway Company is a corporation, and legally organized and incorporated under and by virtue of the laws of the state of Kansas, and has been such corporation for more than 15 years last past.

"2. The said Missouri, Kansas & Texas Railway Company now is and for more than 15 years last past has been the owner of a line of railroad running into and through Bourbon county, Kansas, and during a large portion of said time said railway company has been in active control and operation of said railroad line and through said Bourbon county, Kansas.

"3. Prior to November 1, 1888, in a certain action pending in the circuit court of the United States for the district of Kansas, wherein the Mercantile Trust Company of New York was plaintiff and the said Missouri, Kansas & Texas Railway Company *et al.* were defendants, a suit to foreclose a mortgage theretofore executed by said company, which mortgage covered all of the property, rights and franchises of said company, the defendants herein, Geo. A. Eddy and H. C. Cross, were by Hon. DAVID J. BREWER, the presiding judge of said court, duly appointed the re-

ceivers of the said Missouri, Kansas & Texas Railway Company.

"4. On November 1, 1888, the said Geo. A. Eddy and H. C. Cross, having been duly qualified as such receivers, took full and complete possession of the said Missouri, Kansas & Texas Railway Company, its property and franchises, including track, rolling stock, engines, cars, etc.

"5. From and after November 1, 1888, the said Geo. A. Eddy and H. C. Cross, as such receivers, have been in the full and complete control and operation of said railway, its property, franchises, etc., and during all of said time have been operating said railway for the carriage of freight and passengers under the control of said circuit court of the United States for the district of Kansas, and were so operating said railway at the time of the injuries complained of by the plaintiff.

"6. On or about August 29, 1889, the employees of the receivers, while in the management and control of one of the trains, consisting of an engine and passenger cars, on the said Missouri, Kansas & Texas Railway, and near the city of Fort Scott, in Bourbon county, Kansas, and while in the operation of the same, run said engine and train of cars against and over one red cow, the property of the plaintiff herein, and thereby killed and destroyed said cow.

"7. Said cow was of the value of $70, and was a total loss to said plaintiff.

"8. At the point where said cow was killed, and at the point where she got on the said right-of-way, said railroad track was not fenced with any fence whatever, but should have been fenced as required by chapter 94 of the Laws of 1874.

"9. More than 30 days prior to the commencement of this action the plaintiff demanded of B. N. Gilbert, the ticket and station agent of the receivers at the city of Fort Scott, in said Bourbon county, Kansas, the full value of said cow, but payment of the same was refused by said Gilbert.

"10. Prior to the commencement of this action,

the plaintiff applied to the United States circuit court for the district of Kansas and obtained the permission of said court to sue said receivers in the state court in this cause.

"11. In the prosecution of this action the plaintiff has been compelled to employ an attorney.

"12. The sum of $60 is a reasonable attorney's fee for the prosecution of this action, if plaintiff is entitled to any judgment therefor in this cause.

"13. The employees of the receivers were not guilty of any negligence whatever in the operation of the train, by the operation of which plaintiff's cow was killed.

"14. In the estimate of attorney's fees in fact No. 12, $10 is estimated for the services in the United States circuit court in obtaining its permission to sue the receivers in the state court in this cause.

"15. The receivers personally were not guilty of any negligence whatever in the killing of the plaintiff's cow."

Judgment was thereupon rendered in favor of the plaintiff in the district court for the sum of $136.60. Exceptions were taken by the defendants, and they filed their bill of exceptions and bring the case into this court. Since the trial of the case in the district court, the receivers, Geo. A. Eddy and H. C. Cross, have both departed this life, and Henry C. Rouse was duly appointed receiver *de bonis non* by the United States circuit court, and said action has been revived in the name of said receiver *de bonis non*.

*T. N. Sedgwick*, for plaintiff in error.

*J. D. McCleverty*, for defendant in error.

The opinion of the court was delivered by

JOHNSON, P. J.: This action is brought under the statute of Kansas of 1874 entitled "An act relating to

the killing or wounding of stock by railroads." (Laws of 1874, ch. 94, p. 143.)

"SECTION 1. Every railway company or corporation in this state, and every assignee or lessee of such company or corporation, shall be liable to pay the owner the full value of each, any, [and] every animal killed, and all damages to each and every animal wounded by the engine or cars of such railway, or in any other other manner whatever in operating such railway, irrespective of the fact as to whether such killing or wounding was caused by the negligence of such railway company or corporation, or the assignee or lessee thereof, or not.

"SEC. 2. In case such railway company or corporation, or the assignee or lessee thereof, shall fail for 30 days after demand made therefor by the owner of such animal, or his agent or attorney, to pay such owner, or his agent or attorney, the full value of such animal, if killed, or damages thereto if wounded, such owner may sue and recover from such railway company or corporation, or the assignee or lessee thereof, the full value of such animal or damages thereto, together with a reasonable attorney's fee for the prosecution of the suit, and all costs in any court of competent jurisdiction in the county in which such animal was killed or wounded.

"SEC. 3. The demand mentioned in section 2 of this act may be made of any ticket agent or station agent of such railway company or corporation, or the assignee or lessee thereof.

"SEC. 4. In all actions prosecuted under this act, it shall be the duty of the court, if tried by the court, or jury, if tried by a jury, if the judgment or verdict be for the plaintiff, to find in addition to their general findings for plaintiff the amount, if anything, allowed for attorney's fee in the case.

"SEC. 5. This act shall not apply to any railway company or corporation, or the assignee or lessee thereof, whose road is inclosed with a good and lawful fence to prevent such animal from being on such road."

The only question involved in this case is, Does this act apply to receivers who are operating a railroad in the state of Kansas under the orders and directions of a court of competent jurisdiction? It is claimed by counsel for the plaintiff in error that this act does not apply to receivers operating à railway under an appointment by a court of competent jurisdiction. The language is specific, and nothing is left to ambiguity or uncertainty. The statute, in terms, makes "every railway company or corporation in this state, and every assignee or lessee of such company or corporation" liable, but does not extend the statute to receivers or individuals, unless such individual should be an assignee or lessee of a railway company or corporation. However much force there may be in the argument of counsel, the supreme court of Kansas has fully decided this question, in a decision made on the 6th day of July, the present year, in the case of *Rouse v. Harry*,* (not yet reported,) in construing a statute of this state using the same language in relation to the liabillty of a railway company for negligence of its employees and the liability of a receiver under the statute ; and, for the purpose of this opinion, it is only necessary to give the reason of the supreme court in the case of *Rouse v. Harry*, supra, which, we think, is decisive of this case. Mr. Justice ALLEN, delivering the opinion of the court, says :

"We now proceed to consider the most important question presented by the record in this case, namely, whether ¶ 1251 of the General Statutes of 1889 applies as well to receivers operating railroads as to railroad companies. The section reads : 'Every railroad company organized or doing business in this state shall be liable for all damages done to any employee of such company, in consequence of any negligence of its

---

* See 40 Pac. Rep. 1007.

agents, or by any mismanagement of its engineers or other employees, to any person sustaining such damage.' The trial court charged the jury that this section did apply in this case. It is contended with great earnestness, on behalf of the plaintiff in error, that this section of the statute does not, in terms, apply to receivers; that it gives a cause of action where none existed at common law; that such a statute must be strictly construed; that it cannot be extended to embrace parties not included within its terms; that receivers are not railroad companies, but officers of the court, and cannot be held liable for injuries received by one employee through the negligence of another. The argument in support of this contention by the learned counsel for the plaintiff in error is clear and forcible, and presents in all its strength, as it appears to us, that side of the question, and his position is sustained by decisions of the supreme courts of Georgia and Texas under very similar statutes.

"It is contended that to include receivers is to interpolate by judicial legislation that which the legislature has omitted from the statute. Many authorities are cited denying to the court any such power. It is also urged that this court, in the case of *Beeson v. Busenbark*, 44 Kas. 669; same case, 25 Pac. Rep. 48, has practically decided this question in accordance with that view. That was an action against Beeson & Seldon, who were contractors engaged in the construction of a railroad. They used engines and cars for the transportation of materials and other purposes connected with the construction of the road, and the plaintiff in that case was injured while employed in cleaning the ash-box of an engine. The defendants were not a corporation, but a firm composed of private persons, and were not engaged in the operation of a railroad as common carriers, and it was held that they did not fall within the statute. We are entirely satisfied of the correctness of the decision in that case. The distinction between contractors employed in the construction of a railroad, or of some portion of a road,

and a railroad company operating under a charter from the state as common carriers of freight and passengers, is broad and well marked. The position of a receiver, however, is in many respects anomalous. He is not in any just sense the owner of the property, nor is he personally interested except in the compensation he receives for his services. On the one hand he represents the court by which he was appointed, and the property in his charge is, in some sense at least, in the custody of the law. On the other hand he represents the interests of the corporation, and also of its creditors. The business which he carries on is public so far as railways are highways open to the public ; it is private so far as the profits derived from it are concerned.

''It is somewhat anomalous for courts, through the instrumentality of receivers, to conduct private business for profit; yet the public exigencies and necessities for the continued operation of the great public thoroughfares of the country, no matter what the conflicting rights and interests of stockholders and creditors may be, have been regarded as of such force as to require the continued operation of railroads through the instrumentality of receivers, while the rights of parties litigant are being adjusted through the medium of the courts. There is no transfer of interest from the corporation to the receiver, but only a transfer of management. The business is carried on, so far as owners and creditors are concerned, for the purpose of securing a profit. This profit goes into the hands of the receiver, to be applied in accordance with the principles of law, and paid to the parties justly entitled to it. The surplus, if any, over operating expenses, goes exactly where it would go if the business of the company was honestly conducted by its officers. There is still the same necessity for a multitude of employees to keep its properties in repair and working order, to operate its train service, to collect and disburse its revenues, to keep its accounts, and to protect its interests. Receivers must, in the first instance, always assume control and generalship over the army

of workers they find in the employ of the company. While they have the power to employ and discharge, the general rule is that the force they find already organized is retained and used, except where found incompetent or inefficient. The receiver becomes, in effect, the general manager, charged with the general supervision of the, interests of the company, not through election by the stockholders or board of directors, but by appointment of the court. He stands charged with the performance, then, of the corporate functions of the railroad company. He causes trains to be run, and freight and passengers, mails and express matter to be transported for hire. He collects all the revenues derived from the service. From them he pays all the employees for their services, and discharges all other operating expenses. In substance, then, the business of a railroad corporation in the hands of a receiver moves on as though under the direction of a general manager, to accomplish the same public purposes, to perform the same services for its patrons, to obtain for its bondholders and stockholders the same revenues as before. The receiver, when acting in pursuance of and in obedience to the orders of the court, incurs no personal liability, and has no personal interest in the profits or losses of the business.

"The substance, then, of the whole matter is, that the railroad corporation is neither dead nor dormant. It is, in fact, alive, active and performing its proper functions as much as before. Its properties are in existence, and utilized for the same purposes as ever. Does then the mere shadow of a receivership operate to transform completely the relations its employees sustain to each other and to the assets of the company? For the life and body of a corporation are its franchises, its business, and its property. It is not a sentient being, and has no tangible or personal existence. Suit against a receiver is in form against an individual, but in substance it is against the corporate property in his charge. It is, in all essential particulars, in substance against the corporation it-

self. We think this is the view best sustained by the authorities, and most in consonance with reason and sound principles. 'It is not the words of the law, but the internal sense of it, that makes the law, and our law (like all others) consists of two parts, viz., of body and soul; the letter of the law is the body of the law, and the sense and reason of the law are the soul of the law, *quia ratio legis est anima legis.*' (*Intoxicating-Liquor Cases*, 25 Kas. 763, citing *Eyston v. Studd*, 2 Plow. 465.)

"The case of *Trust Co. v. Thomason*, 25 Kas. 1, was an action against the trust company by an employee to recover damages under the same section of the statute now under consideration, and, although the question as to the applicability of the statute to the case of a trustee operating the road, is not much discussed in the opinion, the principle on which a liability was sustained in that case is very similar to that under consideration in this. The Union Trust Company was not a railway company, and therefore not within the letter of the statute, but it was operating a railroad, and the liability, which could arise only by force of the statute, was maintained in that case. In the case of *Hornsby v. Eddy*, 5 Cir. Ct. App. 560, 56 Fed. 461, the identical question now before us was passed on by the United States circuit court of appeals for the eighth circuit. The statute was held to apply, notwithstanding the Georgia and Texas cases, which are cited in the opinion. The case of *Trust Co. v. Thomason*, supra, was regarded as, in effect, a construction of the statute in favor of the liability of a receiver. This decision was on a demurrer to the petition. The case was afterward tried, a verdict and judgment rendered against the receivers for $15,000, the case again taken to the court of appeals (67 Fed. 219) and the judgment affirmed. Judge Caldwell, in delivering the opinion, says: 'An elaborate brief is filed by the plaintiffs in error in support of the contention that the section of the Kansas statute referred to does not apply to receivers operating a railroad, and that, as to them, the fellow-servant rule as to the

common law still obtains. This question was carefully considered when the case was first here. We are entirely satisfied with the result then reached.' Although the construction placed on the statute of this state by the federal court is not binding on us, the views of a court of such high character are entitled to most respectful consideration. The Iowa statute, which in terms applies not only to the corporation, but to lessees and other persons owning or operating railroads, was held by the supreme court of that state, in the case of *Sloan v. Railway Co.*, 62 Iowa, 728, 16 N. W. Rep. 331, to include receivers.

"In the case of *Railway Co. v. Cox*, 12 Sup. Ct. Rep. 905, the supreme court of the United States held that, as the statutes of Louisiana authorized an action against the receivers of a railway company for wrongfully causing the death of a brakeman, an action might be maintained in Texas against the receivers for acts done in Louisiana, notwithstanding the decision of the supreme court of Texas in the case of *Turner v. Cross*, 18 S. W. Rep. 578. For other cases bearing more or less directly on this question, see *Little v. Dusenberry*, 46 N. J. Law, 614 ; *Farrell v. Trust Co.*, 77 Mo. 477 ; *Klein v. Jewett*, 26 N. J. Eq. 476 ; *Murphy v. Holbrook*, 20 Ohio St. 137."

The judgment of the district court is affirmed.

All the Judges concurring.