EDDY *et al. v.* LAFAYETTE *et al.*

*(Circuit Court of Appeals, Eighth Circuit.* February 15, 1892.)

1. RECEIVERS OF RAILROAD COMPANIES—SUITS WITHOUT LEAVE OF COURT.
Act Cong. March 3, 1887, § 3, (24 St. p. 554,) authorizing suits against receivers of railroads without special leave of court, was intended to place such receivers upon the same plane with the railroad companies, both as respects their liability to be sued for acts done while operating railroads, and as respects the mode of service of process. *Central Trust Co.* v. *St. Louis, A. & T. Ry. Co.,* 40 Fed. Rep. 426, followed.

2. SAME—SERVICE OF PROCESS IN INDIAN TERRITORY.
For injuries committed in the Indian Territory, receivers sued therein are properly served by delivering a copy of the summons to one of their station agents in charge of a railway station therein under the Arkansas laws, made applicable to the Indian Territory, providing that such service is sufficient to confer jurisdiction when defendant is a railway company or a foreign corporation.

3. SAME—OBJECTIONS TO JURISDICTION—WAIVER.
Receivers of a railway, in an action against them in the Indian Territory for an injury committed therein, served with summons by delivering a copy to one of their station agents therein, by answering on the merits and going to trial after motion to quash the service is overruled, will not thereafter be permitted to question the jurisdiction of the court. *Harkness* v. *Hyde,* 98 U. S. 476, distinguished.

4. FIRES SET BY LOCOMOTIVES—PRESUMPTIONS.
In an action in the Indian Territory against the receivers of a railroad to recover for hay destroyed by a fire set by defendants' locomotive, where it appears that one of plaintiffs is a member of the Creek Nation, and that the hay was cut and gathered by her on Creek lands, it will be presumed, in the absence of a contrary showing, to have been lawfully harvested.

5. SAME—PARTIES.
Hay destroyed by a fire negligently set by defendants' locomotive was harvested by the occupant of the land under contract with another, whereby he agreed to advance the requisite funds, the former to receive one-third the proceeds. *Held,* that such persons could maintain a joint action for the loss.

6. SAME.
It is no ground of defense that the contract under which the hay was harvested was invalid because made with a married woman, for, both being parties to the suit, all the necessary parties are before the court.

7. SAME—NEGLIGENCE OF DEFENDANTS.
In an action to recover for hay destroyed by fire set by defendants' locomotive, a charge that in the matter of keeping their right of way free and clear of combustible materials, and in providing their locomotives with suitable spark-arresters, defendants were only called upon to exercise "reasonable care, skill, and diligence," states the proper rule.

8. SAME.
Negligence may be imputed to a railroad company if it allows combustible material to accumulate along its right of way in such quantity, at such places, and at such seasons as renders it liable to become ignited and cause damage to adjacent property.

9. SAME.
The fact that fire is communicated by a passing locomotive is *prima facie* evidence of negligence.

10. SAME—NEGLIGENCE OF PLAINTIFFS.
It appeared that the hay was burned in ricks while plaintiffs were making hay in the vicinity, and that the men so employed were keeping a constant lookout for

fires, and had two water-wagons on the field. *Held,* that the court properly re-
fused a charge based upon the assumption that they did not use "any effort to pro-
tect the hay."

**11. SAME—MEASURE OF DAMAGES.**
In an action to recover for hay destroyed by fire set by defendants' locomotive,
an instruction that *the measure of damages* is the market value of the hay when
burned, with interest from such time, is erroneous in not leaving to the jury any
discretion as to withholding or allowing interest, but is no ground of reversal,
where it appears that the jury did not, in fact, allow interest.

**12. SAME.**
In case there is no local market value, the value is properly fixed by the value at
the nearest market, deducting the cost of transportation.

In Error to the United States Court in the Indian Territory.

Action by Ben F. Lafayette and Sallie M. Hailey against George A.
Eddy and H. C. Cross, as receivers of the Missouri, Kansas & Texas
Railway Company, to recover for hay destroyed by a fire set out by de-
fendants' locomotive. Verdict and judgment for plaintiffs. Defend-
ants brought error. Affirmed.

*Clifford L. Jackson,* for plaintiffs in error.

*W. T. Hutchings* and *Sandels & Hill,* for defendants in error.

Before CALDWELL, Circuit Judge, and SHIRAS and THAYER, District
Judges.

THAYER, District Judge. This is an action to recover the value of
666 tons of hay which was destroyed by fire near Wagoner, in the In-
dian Territory, on August 20, 1889. The hay was stacked in 15 ricks,
at distances varying from 400 yards to 1½ miles from the track of the
Missouri, Kansas & Texas Railway Company. Messrs. Eddy and Cross
were operating said railroad as receivers when the fire occurred. The
complaint filed in the lower court alleged that they had negligently per-
mitted large quantities of dry grass and weeds to accumulate on the rail-
road right of way; that they had in service a locomotive engine which
was not supplied with the best appliances for arresting sparks, and that
while using such engine it was carelesely permitted to emit sparks, or
drop coals of fire, which ignited the combustible material on the right
of way, and started a fire that eventually spread to the hay-ricks, and
destroyed them. On the trial in the lower court the evidence showed
very conclusively that the fire began on the right of way, and was most
likely occasioned by a locomotive drawing a train of freight-cars which
had passed only a few moments before the fire was discovered, and was
seen to emit sparks at or very near the place where the fire originated.
There was also considerable testimony tending to show that the right of
way at that place, and for some distance in either direction, was covered
with combustible material, such as dry grass and weeds, which grew
very close to the track, and was liable to become ignited. It was fur-
ther shown that the section boss in the employ of the receivers had been
requested to burn the combustible material along the right of way, at
that particular point, only a short time before the hay-ricks were de-
stroyed, but that he had neglected to comply with such request. The
trial resulted in a verdict against the receivers in the sum of $2,664.

The record before us shows that an unusual number of exceptions.

were taken to the action of the trial court. Seventy-four errors are noted in the assignment of errors, forty of which seem to be relied upon by counsel to secure a reversal of the cause. It would extend this opinion to an unnecessary length, and would subserve no useful purpose, if we attempted to notice all of the errors that have been assigned. We have considered the various assignments in detail, and find many of them to be without merit. We shall confine our attention, therefore, to those specifications which seem to us to be most material and important.

The first exception that will be noticed relates to the jurisdiction of the trial court. Process was served on the receivers by delivering a copy of the summons to one of their station agents in charge of the railway station at Muscogee, in the Indian Territory. A motion was made to quash the service, which was overruled, and an exception was duly saved. Subsequently the receivers pleaded to the merits, and went to trial, but in so doing reserved to themselves the benefit of their previous exception, so far as it was within their power to do. On this state of facts it is contended that the lower court did not acquire jurisdiction to enter a judgment against the receivers, although it is conceded that under the laws of the state of Arkansas, which have been made applicable to the Indian Territory, such service as was had in the present case is sufficient to confer jurisdiction when the defendant is a railway company or a foreign corporation. Mansf. Dig. §§ 4979–4982, and section 31, Act Cong. May 2, 1890, (26 U. S. St. p. 94.)

We regard this contention of counsel as untenable for two reasons. The third section of the judiciary act of March 3, 1887, (24 U. S. St. p. 554,) authorizing suits to be brought against receivers of railroads, without special leave of the court by which they are appointed, was intended, as we think, to place receivers upon the same plane with railway companies, both as respects their liability to be sued for acts done while operating a railroad and as respects the mode of obtaining service. Such was the view entertained by the circuit judge of this circuit in the case of *Central Trust Co. v. St. Louis, A. & T. Ry. Co.*, 40 Fed. Rep. 426, and we concur in what is there said on this subject. We are also of the opinion that the jurisdiction of the lower court may be maintained on the further ground that, by answering to the merits and going to trial after the motion to quash the service of summons had been overruled, the receivers submitted to the jurisdiction of the court, and should not be permitted to question its jurisdiction in this court. In so holding, we have not overlooked the decision in *Harkness* v. *Hyde*, 98 U. S. 476, but we believe that case may be fairly distinguished from the one at bar. In *Harkness* v. *Hyde* the process involved had not only been served outside of the territorial jurisdiction of the court, and within the limits of an Indian reservation, but the officer who served the process was guilty of a violation of law in entering the reservation for that purpose. In the case at bar the service was had at a place within the jurisdiction of the court from which the process emanated. It also had jurisdiction of the subject-matter of the suit, by virtue of the fact that the negligent acts complained of had been committed within the Indian Territory.

Under these circumstances, we are unable to concede that the receivers may raise the question of jurisdiction in this court after pleading to the merits, and entering upon a long trial in the lower court. It is a general rule that mere defects in the service of process may be waived by an appearance, where the court has jurisdiction of the subject-matter of the controversy, and the defect in the service only impairs the jurisdiction over the person of the defendant. Such is the rule in the state of Arkansas, whose laws have been extended over the Indian Territory, and such is also the rule in other states. *Railway Co.* v. *Barnes*, 35 Ark. 95; *Martin* v. *Goodwin*, 34 Ark. 682; *Kronski* v. *Railway Co.*, 77 Mo. 368; *Rippstein* v. *Insurance Co.*, 57 Mo. 86; *Estill* v. *Railroad Co.*, 41 Fed. Rep. 853; *Railway Co.* v. *McBride*, 141 U. S. 127, 11 Sup. Ct. Rep. 982.

The cases are very exceptional where a litigant is at liberty to deny the jurisdiction of a court, after defending on the merits, and taking the chances of making a successful defense precisely as if it had jurisdiction. If the receivers desired to raise the question of jurisdiction in this court, we are of the opinion that they should have refused to appear in the lower court, or, having appeared for the purpose of moving to quash the service of process, that they should have abandoned the case when their motion to quash the service was overruled.

The next question to be considered is whether the plaintiffs below showed such a title to the hay that was destroyed as entitled them to recover its value. It is strenuously insisted by counsel for the receivers (and this is said to be their main contention) that the plaintiffs below showed no such title as warranted a recovery, for the reason that the hay was cut on lands belonging to the Creek Nation, and that both of the plaintiffs were trespassers in so doing; and, *secondly*, because one of the plaintiffs was a licensed trader, and, as such, was expressly prohibited by a local statute from cutting hay on the common pasturage grounds of the Creek Nation. It is sufficient to say, with reference to this contention, that the record before us fails to show whether the hay was cut on the common pasturage of the nation, or on lands at the time occupied and held by Mrs. Hailey individually, according to the customs and usages of the nation. We will certainly not presume that either of the defendants in error was guilty of a trespass, much less that in cutting the hay either of them violated a criminal statute. In so far as we are permitted to indulge in presumptions, we must presume that the hay was lawfully harvested. The burden is on the receivers to overcome that presumption, and we find nothing in the present record that would authorize us to say that the hay was gathered on the public domain without license, and that, for that reason, the defendants in error showed no title.

The record does disclose, and there is no evidence to the contrary, that one of the plaintiffs in the lower court (Mrs. Hailey) was a member of the Creek Nation. As such, she certainly held the land where the hay was harvested as a tenant in common with other members of the Creek Nation, even if it was not gathered on lands of which she was the sole

occupant, according to the usages and customs of her tribe. We know of no law of the nation, nor has any such law been called to our attention, that would preclude her from cutting hay on land which she occupied in common with other members of the Creek Nation. The record further shows that the hay in question was harvested under a contract between the defendants in error, whereby Mrs. Hailey agreed to cut and bale, and also to deliver, 2,000 tons of hay at Wagoner, in the Indian Territory. The requisite means to enable her to fulfill the contract were to be advanced by Ben F. Lafayette, the other defendant in error, and, in consideration of the performance of the contract by Mrs. Hailey, she was to receive one-third of the net proceeds of the hay when harvested and sold. The hay appears to have been put up in ricks, pursuant to the provisions of this contract, by persons in Mrs. Hailey's employ, and it was in her possession when the fire occurred. Under these circumstances, we are of the opinion that the defendants in error showed a sufficient title to enable them to maintain a joint action against a wrong-doer for the loss of the hay. In this connection we will also add that the receivers are not in a position to urge, as a ground of reversal, that the contract between the defendants in error was invalid, because Mrs. Hailey was a married woman. Even if such be the fact, it does not impair her title to the hay or prevent her from recovering its full value. If the position is tenable, it merely shows that one of the plaintiffs below was an unnecessary party. Mrs. Hailey has not thought proper to lay claim to the entire proceeds of the hay, on the ground that the contract between herself and the other defendant in error is not enforceable as against her by reason of her coverture, and the receivers will not be permitted to make such a plea in her behalf. It is sufficient for their protection that all parties who have an interest in the hay have been made parties to the suit, and will be concluded by the judgment. *Allen* v. *Buffalo*, 38 N. Y. 280; *Simar* v. *Canaday*, 53 N. Y. 298, 301; *Mississippi Planing Mill* v. *Presbyterian Church* 54 Mo. 520; *Lass* v. *Eisleben*, 50 Mo. 122; *Yonley* v. *Thompson*, 30 Ark. 399.

A number of the exceptions taken have reference to the charge, and to the action of the trial court in refusing requests to charge, which were tendered in behalf of the receivers. As some of these exceptions relate to the giving and refusal of instructions touching the degree of care that the parties to the suit were bound to exercise, we can best indicate our views on this branch of the case by stating the substance of the charge of the trial court on these points. In the matter of keeping their right of way free and clear of combustible materials, and in the matter of providing their locomotives with suitable appliances so that they would not emit sparks, the trial court charged that the receivers were only called upon to exercise "reasonable care, skill, and diligence;" in other words, that the law only exacted of them that degree of diligence that a prudent and skillful man would exercise under like circumstances to prevent injury to his own property. It further instructed the jury, however, that while the receivers were not liable unless the fire was occasioned by their negligence, yet, if they had allowed combustible

material to accumulate along the track which was liable to be ignited by sparks from passing engines, the jury would be authorized to impute negligence. It further directed the jury that it was the duty of a railway company to keep its right of way clear of combustible materials, and that its failure to do so was a circumstance showing negligence. It also instructed them, in substance, that the fact that a fire had been occasioned by sparks from a passing engine was *prima facie* evidence of negligence, and that such proof would compel the receivers to show that it was not due to their fault, and that they had not been guilty of negligence. On the other hand, the jury were advised that the plaintiffs in the lower court could not recover if, by their own fault or negligence, they had contributed to the burning of the hay. They were further told that if the evidence showed the existence, in the locality where the hay was stacked, of "a general and uniform custom of long standing, to plow around hay-ricks or make fire-guards," they might consider that fact in determining if the plaintiffs had been guilty of contributory negligence. Such, in substance, were the directions given by the trial court concerning the respective duties of the parties to the controversy. In so far as the charge of the lower court defines the degree of care that should have been exercised in keeping their locomotives and right of way in a proper and safe condition to prevent fires, the plaintiffs in error have no cause to complain. The charge in this respect embodies the substance of several requests that were asked by the plaintiffs in error. That portion of the charge also appears to us to have been substantially correct which related to the accumulation of combustible material along the right of way, and to the burden of proof after the origin of the fire had been shown. Negligence may properly be imputed to a railway company if it suffers combustible material to accumulate on its right of way in such quantity, at such places, and at such seasons as renders it liable to become ignited, and cause damage to adjacent property. It is also incumbent on a railway company to show that it has used all of those reasonable precautions which the law exacts, when it is proven that adjacent property has been damaged by a fire, which was occasioned by sparks or cinders from a passing locomotive. The decisions to this effect are both numerous and uniform. Shear. & R. Neg. §§ 676, 678, and citations.

It is contended, however, that, in defining the duty of the defendants in error, the trial court should have gone further than it did, and should have declared, as it was requested to do, "that if  *  *  *  the plaintiffs did not use any effort to protect their hay, which they allege was burned by sparks cast out by defendants' engine, either by plowing around the ricks of hay in question, or by making fire-guards around the same, or using other means, such as a careful, prudent person should have done, and that because of such failure to so protect said hay that the same was burned, the jury should find for the defendants." We think this request ought not to have been given, for the following reasons: It assumes that the evidence in the case tended to show that the defendants in error had made no effort and had taken no precautions to protect their hay from fire, which was not the fact. The testimony

showed (and there was no proof to the contrary) that the defendants in error were making hay in the immediate vicinity of the ricks when they were destroyed; that the men so employed were keeping a constant lookout for fires; and had two water-wagons on the field for the express purpose of extinguishing such fires as might occur. The request was accordingly misleading, and was properly refused, in that it ignored testimony tending to show that certain reasonable precautions had been taken by the defendants in error to protect their property. It is not claimed, nor does it appear from the record, that there was any evidence of contributory negligence, except the testimony of three or four witnesses, tending to show that it was the practice of some persons, in the locality where the fire occurred, to plow around hay-ricks, for the purpose of preventing fires. The existence of any practice tantamount to a general custom was controverted by the defendants in error. The receivers, however, requested the trial court to charge, in substance, that, if the proof showed "a custom to plow around hay-ricks," the jury might consider that fact in determining whether the defendants in error had been guilty of such negligence as would preclude a recovery. From the tenor of the charge as above stated, it appears that the trial court granted the prayer, and charged the jury on this point substantially as the plaintiffs in error had requested it to do. We conclude, therefore, that the receivers are not entitled to complain of the manner in which the issue as to contributory negligence was submitted to the jury. In so far as the trial court dealt with that question, its charge was certainly correct. It might have directed the jury to consider whether the failure to plow around the hay-ricks was not culpable negligence, irrespective of the existence of such a custom; but it was not asked to give that direction, and its failure to do so, under the circumstances stated, will not warrant a reversal.

There are two other assignments of error to be considered, which relate to the measure of damage. The court below instructed the jury that the measure of damage was "the market value of the hay when burned, with six per cent. interest from the time it was destroyed." This instruction is fairly subject to criticism, for the reason that it did not leave the jury any discretion to withhold or allow interest on the value of the hay. We entertain no doubt that interest may be allowed as damages, in cases where property has been destroyed through the culpable negligence of another, as well as when it has been wrongfully converted; but the usual, and perhaps the better, practice is to leave such allowance to the discretion of the jury. *Beals* v. *Guernsey*, 8 Johns. 446; *Thomas* v. *Weed*, 14 Johns. 255; *Devereux* v. *Burgwin*, 11 Ired. 490; *Gilpins* v. *Consequa*, Pet. C. C. 85; Sedg. Dam. (7th Ed.) 189–191. In the present case, however, we find no occasion to disturb the verdict on account of the error complained of, as it is quite evident from the record that the jury estimated the value of the hay at four dollars per ton, and did not in fact award interest.

The plaintiffs in error also requested the trial court to charge the jury "that, if they found that there was a market for hay in the rick * * *

in the vicinity where it was burned, then they should disregard all evidence as to the market for hay at other places." This request the court denied in form, but charged in substance as follows:

"That the measure of damages was the market value of the hay and six per cent. interest, and, if there was no local market value, that the value might be fixed with reference to the market value at the nearest place where hay was sold, due allowance being made for cost of transportation," etc.

We are unable to discover any material error in this direction or in the refusal of the receivers' request. It is evident, we think, that the jury must have understood the charge as a direction to allow the market value of the hay at Wagoner, if there was a local market value, irrespective of its value elsewhere. There is also abundant evidence in the case to support the finding of the jury as to the value of the hay. We have, as before stated, considered all of the exceptions taken to the action of the trial court, but have only mentioned those which appear to us to have most weight. The case seems to have been tried in the lower court with a view of saving as many exceptions as possible, and, in view of that fact, we cannot refrain from condemning a practice which subserves no useful purpose, and imposes so much unnecessary labor on an appellate court. The judgment of the lower court is hereby affirmed.