### HORNSBY v. EDDY et al.

#### (Circuit Court of Appeals, Eighth Circuit. May 29, 1893.)

#### No. 226.

RAILROAD COMPANIES—NEGLIGENCE—FELLOW SERVANTS—RECEIVERS.

1 Gen. St. Kan. 1889, par. 1251, provides that "every railroad company organized or doing business in this state shall be liable for all damages done to any employe of such company, in consequence of any negligence of its agents, or by any mismanagement of its engineers or other employes, to any person sustaining such damage." *Held,* that the right of a baggage man under this statute to damages for an injury resulting from the negligence of other train men is in no wise affected by the fact that the railroad is at the time in the custody of a receiver, and operated by him. Trust Co. v. Thomason, 25 Kan. 1, applied. Beeson v. Busenbark, 25 Pac. Rep. 48, 44 Kan. 669, distinguished.

In Error to the Circuit Court of the United States for the District of Kansas.

This was an intervening petition by John E. Hornsby filed against George A. Eddy and Harrison C. Cross, as receivers of the Missouri, Kansas & Texas Railway, for damages for personal injury. The trial court sustained a demurrer to the petition, and petitioner brings error. Reversed.

Nelson Case and W. B. Glasse, (W. D. Atkinson, on the brief,) for plaintiff in error.

T. N. Sedgwick, for defendants in error.

Before CALDWELL and SANBORN, Circuit Judges, and THAYER, District Judge.

THAYER, District Judge. The sole question presented by the record in this case is whether, under the laws of Kansas, a railway employe who is injured by the carelessness of a fellow employe, while at work in the line of his duty on a railroad that is at the time in the hands of a receiver, may have an allowance against the property of the railway company, that is in the custody of the receiver, for the injuries so sustained. The statute under which this question arises was enacted in Kansas in 1874, and is as follows:

"Every railroad company organized or doing business in this state shall be liable for all damages done to any employe of such company, in consequence of any negligence of its agents, or by any mismanagement of its engineers or other employes, to any person sustaining such damage." 1 Gen. St. Kan. 1889, par. 1251.

It is clear that, with respect to persons employed by a railway company as railway operatives, the statute last above quoted changes the rule of the common law that the master is not liable to a servant for an injury sustained in consequence of the negligence of a fellow servant. Does the fact that a receiver is appointed to temporarily operate a railroad, forthwith alter the status of all of its employes, and re-establish as to them the old rule of the common law, so long as the receiver remains in charge? Viewing the question in the light of those considerations of public policy, which probably gave birth to the statute, we cannot conceive of any reason why the appointment of a receiver should have such effect. It is a fact of which we may well take judicial notice that great railway systems, which employ thousands of men, are frequently operated for a term of years through the agency of a receiver. Such receivers do not, as a general rule, change the working force of the road, or the rules and regulations by which trains are run or by which the other business of the road is transacted. The men whom they employ are engaged in the same quasi public service as other railway employes, and daily encounter the same risks and hazards. Furthermore, the receiver of a railroad operates it for the immediate benefit of the company by which it is owned, in that he discharges all of the public duties of the corporation, and appropriates the income of its road to the preservation of its property and franchises, and to the payment of its debts. In view of the fact that many railroads have been operated for years by receivers, and the manner in which it is customary to operate them, congress has recently recognized both the justice and the expediency of placing such receivers on a plane with railway corporations, by declaring in explicit language—

"That whenever, in any cause pending in any court of the United States, there shall be a receiver or manager in possession of any property, such receiver or manager shall manage and operate such property according to the requirements of the valid laws of the state in which such property shall be situated, in the same manner the owner or possessor thereof would be bound to do if in possession thereof; * * * and that every receiver or manager of any property appointed by any court of the United States may be sued in respect of any act or transaction of his in carrying on the business connected with such property, without the previous leave of the court in which such receiver or manager was appointed." 24 Stat. 554; Eddy v. La Fayette, 49 Fed. Rep. 807–809, 1 C. C. A. 441.

These general considerations warrant the conclusion that, if the rules of the common law are modified for the benefit of the employes of railway companies, either because of the extraordinary dangers to which they are exposed, or the quasi public nature of the service in which they are engaged, or for any other reason, then, for like reasons, the old rule of the common law should not be held applicable to the employes of a receiver who is engaged in operat-

ing a railroad; and we can scarcely conceive that any legislative body would intentionally make any distinction between the two classes of employes last referred to.

It is said, however, that the Kansas statute above cited is in derogation of the common law, and for that reason must be strictly construed. But the statute is also a remedial statute, and, being of that nature, the plaintiff in error is entitled to invoke an interpretation that will give effect to the intention of the lawmaker. At all events, a construction ought not to be adopted which merely clings to the letter, and ignores the obvious spirit and purpose, of the enactment.

It is furthermore contended by the defendants in error that the statute in question has been construed by the supreme court of Kansas, and that it has been held to be inapplicable to persons in the railway service when the road on which they are employed is in charge of a receiver. With respect to this contention, we must concede that, the question before us being one of statutory construction, we are bound to follow the construction which has been adopted by the supreme court of Kansas, if it appears that the statute has been definitely construed in that state, and held to be inapplicable to the employes of a railway receiver. But we are not satisfied that the court of last resort of that state has ever adopted the construction contended for by counsel for the receivers. On the contrary, we think that its decisions thus far fully support the contention that the employes of a railway receiver are within the purview of the statute. In the case of Trust Co. v. Thomason, 25 Kan. 1, the railroad in question was being operated by the Union Trust Company, which appears to have been acting as trustee for mortgage bondholders, and one of its employes, who was a track repairer, was injured by the negligence of a fellow employe. It was held that he might recover against the trustee, the Union Trust Company, under the statute above quoted. It is true that the court in that case did not discuss the question whether the fact that the trustee was not a "railroad company" deprived its employes of the benefit of the statute, but the question was so obvious that we must presume that it did not escape the observation of the judges of that learned and experienced court. The point chiefly controverted in that case was whether a track repairer, as well as a train operative, was entitled to the benefit of the statute; and, in deciding that question in the affirmative, the court made use of some significant language, which is equally applicable to the case at bar. Thus it was said that "the proper test in determining the question is, does the duty of the employe require him to perform service which exposes him to hazards peculiar to the business of using and operating a railroad?" Furthermore, it was said, in substance, that "the case is within the statute and its constitutional limit" if the "employment is entire, and a part of the continuous service relating to the perilous business of railroading." Not a line is to be found in the decision which intimates that to entitle a person to the benefit of the statute, who is engaged in the railroad business, and who is daily subject to the perils incident

to that employment, he must be actually in the service of a company that was organized as a railroad corporation.

In a later case decided by the supreme court of Kansas (Beeson v. Busenbark, 44 Kan. 669, 25 Pac. Rep. 48) it was held that the statute did not apply to an employe of certain railroad contractors, who were engaged in constructing a railroad, and, in the prosecution of the work, had occasion to use cars and engines to some extent. A careful analysis of the later case, satisfies us, that the court rested its decision on the ground that the employer in that case was not operating a railroad as a common carrier of freight and passengers, within the meaning of the statute, but was merely using cars and engines incidentally, in the prosecution of the work of railway construction. The case was therefore adjudged to be not fairly within the statute, or within the mischiefs which it was intended to remedy. The case at bar falls within the statute as construed in Trust Co. v. Thomason, 25 Kan. 1, and the doctrine of that case is not in conflict, we think, with the later decision in the case of Beeson v. Busenbark.

We have examined the cases cited from other states, where similar statutes have been construed, (Henderson v. Walker, 55 Ga. 481; Thurman v. Railroad Co., 56 Ga. 376; and Turner v. Cross, [Tex. Sup.] 18 S. W. Rep. 578;) but we are of the opinion that the Kansas statute has, in effect, been construed by the supreme court of that state in a manner which brings the case at bar fairly within the provisions of the statute, and in that view we fully concur. We should entertain the same view if the question was one of first impression. As the plaintiff in error, at the time he was injured, was a baggage man, and as the intervening petition showed that he was injured by the carelessness of other train men, the circuit court erred in sustaining the demurrer and in dismissing his petition on the ground that it did not state a cause of action. The judgment of the circuit court is therefore reversed, and the cause is remanded, with directions to overrule the demurrer to the intervening petition, and to proceed with the trial and decision thereof in a manner not inconsistent with this opinion.