## MALOTT, RECEIVER, *v.* SHIMER, ADMINISTRATRIX.

[No. 18,907. Filed June 13, 1899.]

COURTS. — *Jurisdiction.* — *Action Against Receiver Appointed by United States Court.* — *Railroads.* — The receiver of a railroad company, acting under appointment of the United States Circuit Court, may be sued in a state court, without previous leave of the appointing court, for damages on account of the death of an employe caused by the alleged negligence of the company. *pp. 37-41.*

DAMAGES. — *Negligence.* — *Excessive Damages.* — A judgment of $5,000 against a railroad company for the death of plaintiff's intestate will not be held to be excessive, where the evidence showed that deceased at the time of his death was fifty years of age, and in good health, had been in the United States postal service eighteen years, receiving a salary of $1,150 per annum, left a widow and two sons, aged nineteen and fourteen, dependent upon him for support, and that his expectancy of life was about twenty-one years. *pp. 41, 42.*

Malott, Rec., v. Shimer, Adm.

DAMAGES.—*Evidence.*—*Negligence.*—In an action for damages for the wrongful death of decedent it was not necessary to prove the length of time decedent would have been able to continue his earnings, nor what part of his earnings was spent for the support of his wife and children in order to justify a verdict for more than nominal damages. *pp. 41, 42.*

INSTRUCTIONS. — *Damages.* — An objection to an instruction in an action for damages for the wrongful death of plaintiff's decedent, limiting the recovery to pecuniary damages, for the reason that the instruction did not enumerate the elements of allowable pecuniary damages is not available, where a specific enumeration of the elements of damages was not requested. *pp. 42, 43.*

ACTION.—*Death by Wrongful Act.*—*Survival of Action.*—*Negligence.* —The provision of the Illinois statute that whenever the death of a person shall be caused by the wrongful act or neglect of another, and such act or neglect is such as would have entitled the party injured to maintain an action and recover damages therefor if death had not ensued, then the person who would have been liable shall be liable to the personal representative of the deceased, creates a right of action, and such right of action cannot be regarded as a survival of the action vested in the intestate. *pp. 43, 44.*

SAME.—*Death by Wrongful Act.*—*Survival of Action.*—*Negligence.*— The only relation the provision of the Illinois statute creating a cause of action for the death of a person by the wrongful act of another has with the rights of the deceased is that its validity is to be tested by the inquiry whether the deceased could have maintained an action against the defendant for the injuries had he survived them ; if he could, death having ensued therefrom, his personal representative may maintain an action for the use of the widow and children. *pp. 43, 44.*

From the Marion Superior Court. *Affirmed.*

*John G. Williams,* for appellant.

*Ayres, Jones & Hollett,* for appellee.

HADLEY, J.—Appellant was, by the circuit court of the United States for the district of Indiana, in 1896, appointed receiver of the Terre Haute & Indianapolis Railroad Company, and while he was operating the railroad of said company, as such receiver under the orders of the court, appellee's intestate, while traveling on said railroad as a postal clerk, was killed in the state of Illinois by the alleged negligence of the defendant.

Malott, Rec., v. Shimer, Adm.

Appellee brought this suit to recover damages for the death of her husband without first obtaining leave of said circuit court so to do. Appellant demurred to the complaint, for want of jurisdiction in the Marion Superior Court over the subject-matter of the action. The demurrer was overruled. Answer by general denial, trial by jury, and verdict and judgment for plaintiff for $5,000. The overruling of the demurrer to the complaint and appellant's motion for a new trial are the only errors assigned.

Whether appellant, acting as a receiver under appointment of the United States Circuit Court, can be sued in a state court, without previous leave from the appointing court, is the only question presented by the demurrer. We perceive no useful purpose to be attained by a review of the decisions as they existed prior to 1887. It is sufficient to state that the weight of authority held to the ·general rule that the possession of a receiver was inviolable, and that other courts could not acquire jurisdiction over the subject-matter of the trust without specific authority so to do from the court appointing the receiver. But the application of the doctrine to railroads traversing more than one state, that were being operated by receivers, became productive of such great and manifold hardship to citizens who became claimants under the receiver, as to demand a modification of the rule. To invest a receiver, who had assumed the role of a common carrier and who solicited and received business over long lines of railway, with the special privilege of requiring all persons injured by acts or transactions of his to seek redress in the court of his appointment, where they would be denied the right of trial by jury, and subjected to heavy expense, was found to be so oppressive and unreasonable that some of the federal courts, prior to 1887, entered general orders in such cases, granting claimants against the receiver authority to sue in the state courts in the county where the cause of action arose.

In the case of *Dow* v. *Memphis, etc., R. Co.*, 20 Fed. 260, on page 268, Caldwell, J., in stating reasons for such an order, said: "Where property is in the hands of a receiver simply as a custodian, or for sale or distribution, it is proper that all persons having claims against it, or upon the fund arising from its sale, should be required to assert them in the court appointing the receiver. But a very different question is presented where the court assumes the operation of a railroad hundreds of miles in length, and advertises itself to the world as a common carrier. This brings it into constant and extensive business relations with the public. Out of · the thousands of contracts it enters into daily as a common carrier, some are broken, and property is damaged and destroyed, and passengers injured and killed by the negligent and tortious acts of its receiver and his agents. In a word, all the liabilities incident to the operation of a railroad are incurred by a court where it engages in that business; and, when they are incurred, why should the citizen be denied the right to establish the justice and amount of his demand, by the verdict of a jury in a court of the county where the cause of action arose and the witnesses reside? If the road was operated by its owners or its creditors, the citizen would have this right, and when it is operated for their benefit by a receiver, why should the right be denied?"

Congress, taking cognizance of the evils and hardships flowing from the rapidly increasing railroad receiverships, in 1887 enacted a statute which provides as follows: "That every receiver or manager of any property appointed by any court of the United States may be sued in respect of any act or transaction of his in carrying on the business connected with such property, without the previous leave of the court in which such receiver or manager was appointed; but such suit shall be subject to the general equity jurisdiction of the court in which such receiver or manager was appointed, so far as the same shall be necessary to the ends of justice." 25 U. S. Statutes, p. 436.

Malott, Rec., *v.* Shimer, Adm.

In the recent case of *Ray* v. *Peirce*, 81 Fed. 881, in an application to remove to the United States Court a suit brought against his receiver in a state court, Baker, J., said concerning the conditions that led to the enactment of the above statute: "Such are the general principles of the law, uninfluenced by legislation applicable to receiverships. The consequences flowing from these principles of the law were found to be intolerably burdensome to persons having small claims and demands against the insolvent or against the receiver for his acts or transactions in his official capacity. To compel the claimant to prosecute a suit against the receiver of a railroad for a small demand in the court of his appointment, generally remote from the claimant's residence, involved such inconvenience and expense as to amount in many cases to a practical denial of justice. Even an application to the court who appointed the receiver for leave to sue in another court nearer the residence of the claimant and his witnesses was found to be inconvenient and expensive, and frequently such applications were met with denial. With the multiplicity of railroad receiverships the evil became so intolerable that legislation was found necessary to secure relief. Section 3 of the act of March 3, 1887."

Appellant contends that the right conferred by this statute extends only to suits in other federal courts, and that "it confers no jurisdiction of any kind, or in any manner upon any other courts." We cannot yield our assent to this proposition. Little relief from the mischiefs sought to be remedied would be attained by this sort of construction, and we should not adopt it unless its provisions will admit of no other. It is the duty of a court, in construing a remedial statute, to give it that interpretation, if not inconsistent with its terms, that will promote and advance the remedy intended by the lawmakers. Section two of the same act provides that a receiver appointed by a federal court to manage or operate property in his possession, shall do so in conformity to the valid laws of the state in which the property shall be situated,

and in the same manner that the owner would be required to operate it if in possession; that is to say, it makes receivers of a federal court, operating a railroad and dealing with the general public as a common carrier, amenable to state laws in the same manner, and by the same rules of liability, that apply to rival corporations managing their own similar property. The two sections construed together clearly indicate that the object Congress had in view was to put receivers operating railroads under orders of federal courts upon the same footing as owners operating their property in the same territory, so far as concerns the legal liability of such receivers to the state and to the demands of citizens growing out of the operation of the railroad. The right to liquidate claims against such receivers before a competent and convenient tribunal is a reasonable grant, and in no sense incompatible with the receiver's possession or rights of the owners or creditors. Execution upon a judgment thus obtained is not contemplated by the statute, nor sought in this case, but the existence and extent of the claim, where thus judicially determined, is to be referred to the court, in which the receiver was appointed, for equitable settlement.

In at least two cases, the United States Supreme Court has declared the scope of the federal statute to embrace all courts of competent jurisdiction, and that it should not be restricted to federal courts. The case of *Texas, etc., R. Co.* v. *Johnson*, 151 U. S. 81-101, 14 Sup. Ct. 250-255, was begun in a state court of Texas, against a receiver, without leave, and in course of the opinion the court, by the Chief Justice, said: "By section three of the act of March 3, 1887, 24 U. S. Stat. 552, as corrected by the act of August 13, 1888, 25 U. S. Stat. 433, every receiver, appointed by a court of the United States, may be sued in respect of any act or transaction of his in carrying on the business connected with the property, without the previous leave of the court by which such receiver was appointed. Necessarily, such suit may be brought in any court of competent jurisdiction and

proceed to judgment accordingly." The case of *McNulta* v. *Lochridge*, 141 U. S. 327, 12 Sup. Ct. 11, is to the same effect.

Other federal courts, so far as their decisions have come under our observation, have uniformly held that the legislation of 1887 applies alike to state and federal courts, following what they conceive to be the rule laid down by the United States Supreme Court in *McNulta* v. *Lochridge*, and *Railway* v. *Johnson, supra.* See *Dillingham* v. *Hawk*, 23 U. S. Appeal 273, 9 C. C. A. 101, 60 Fed. 494, 23 L. R. A. 517; *Missouri, etc., R. Co.* v. *Texas, etc., R. Co.*, 41 Fed. 311-314; *Central, etc., Co.* v. *St. Louis, etc., R. Co.*, 40 Fed. 426; *Central, etc., Co.* v. *East Tenn., etc., R. Co.*, 59 Fed. 523; *Eddy* v. *Lafayette*, 49 Fed. 807, 1 C. C. A. 441. The same construction has been given the act of 1887 by the supreme courts of Texas and Illinois: *McNulta* v. *Lochridge*, 137 Ill. 270-282, 27 N. E. 452, and *Dillingham* v. *Russell*, 73 Texas 47-50, 11 S. W. 139. We conclude therefore that appellee had the right to bring her action, without first obtaining leave of the court in which appellant was appointed a receiver, and the right to proceed to final judgment and liquidation of her claim before the chosen tribunal, and that appellant's demurrer to the complaint for want of jurisdiction was properly overruled.

Appellant insists that the damages assessed by the jury are excessive. The action is based upon the statute of Illinois, generically known as Lord Campbell's Act, that limits the recovery to the pecuniary loss of the widow and next of kin, not to exceed $5,000. The evidence shows that appellee's decedent, at the time of his death, was fifty years of age, in good health, had been in the United States postal service seventeen or eighteen years, receiving a salary of $1,150 per annum, left a widow, and their two sons, aged nineteen and fourteen respectively, as the next of kin; that his wife and children were dependent upon him for support, and that the

expectation of life of a man in good health at the age of fifty is twenty and ninety-one one-hundredths years.

We cannot agree with appellant that, for want of evidence as to the length of time the intestate would have been able to continue his earnings, and for failure to prove what part of his earnings was spent for the support of his wife and children, the jury should have awarded only nominal damages. It is the legal duty of a husband and father to support his wife and children; and when the ability is shown, the law presumes that duty is discharged until overcome by evidence. "Where the relation of the party, whose death has been caused, to those for whose benefit the suit is being prosecuted, has been shown, and his obligation, disposition, and ability to earn wages or conduct business, and care for, support, advise, and protect those dependent upon him, the matter is then to be submitted to the judgment and sense of the jury. The ultimate question of the amount resting within the province and sound discretion of the jury, their finding will never be disturbed where the court cannot say that improper motives have swayed them in ascertaining the amount returned." *Pittsburgh, etc., R. Co.* v. *Burton*, 139 Ind. 357-378, and cases there cited. If the intestate's earnings had continued the same for ten years and he had bestowed but half the amount upon his family, their pecuniary loss would have amounted to the sum of recovery, and this without any estimate for the loss of parental training to which the sons were entitled. We cannot hold that the damages assessed are excessive.

The instruction given by the court, complained of, informed the jury that the measure of damages was the actual pecuniary loss shown by the evidence to have resulted to the widow and children, if any, by reason of the death of the husband and father; that they could not allow damages for any pain and suffering endured by the deceased, nor for funeral expenses, nor for any grief or sorrow on the part of the widow and children on account of the death of the de-

ceased; but that the damages must be confined to the actual pecuniary loss sustained by the widow and children, not exceeding $5,000; that if the evidence did not show any pecuniary loss to the widow and children, if they found for the plaintiff, they should award only nominal damages; but if it did show such loss, that they should return such sum as will cover it, not exceeding the above limit. The objection urged to this instruction is that it is not sufficiently explicit in defining the damages to which the plaintiff was entitled. The instruction carefully limited the recovery to pecuniary damages, was clearly right so far as it went, and, if appellant had desired a specific enumeration of the elements of allowable pecuniary damages, he should have requested it. There was no available error in giving this instruction.

Appellant requested the giving of two instructions, which was refused by the court. The first request refused told the jury that there had been no evidence submitted tending to show for how long a time the deceased would probably have been able to earn the salary he was receiving at the time of his death, nor how much of that salary was expended for the personal use of the deceased, nor how much of it, if any, was expended for the support of his family, nor how much of his time the deceased spent with his family, nor what part he took in raising and educating his sons, and that, in making up their verdict, the jury must allow nothing for any of these things, and, if the evidence showed no loss outside these items, their verdict should be for nominal damages only. This instruction was clearly wrong for reasons given concerning the instruction given by the court.

The second instruction refused is as follows: "Before the plaintiff is entitled to recover in this action, the law requires her to show, by the evidence, that Richard T. Shimer had a cause of action against the defendant, which had accrued previous to, and existed at the time of, his death; and if the evidence that has been submitted to you fails to satisfy you that some time elapsed between the injuries which Shimer

received, and his death resulting from these injuries, then your verdict should be for the defendant." This instruction was asked upon the theory that the action, if any, survived, and if death was instantaneous and no action vested in the deceased, then none could survive or accrue to his widow and next of kin, under the statute.

The statute of Illinois will not admit of the construction contended for. It provides that "Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, entitled the party injured to maintain an action and recover damages in respect thereof," then the person or corporation which would have been liable if death had not ensued, shall be liable to an action by the personal representative of the deceased, for the exclusive use of the widow and next of kin. The right of action given by this statute is created by the statute, and in no sense can it be regarded as a survival of the action vested in the intestate. The only relation it has with the rights of the deceased is that its validity is to be tested by the inquiry as to whether the deceased could have maintained an action against the defendant for the injuries if he had survived them; if he could, death having ensued therefrom, his personal representative may for the use of the widow and children. *Pittsburgh, etc., R. Co.* v. *Hosea,* 152 Ind. 412. The second instruction was properly refused.

We find no error in the record. Judgment affirmed.