## VICTOR SAINT AMAND, Plff.,

*v.*

## SUCRERIES DE SAINT JEAN, Dft.

---

San Juan, Law, No. 1107.

PORTO RICO EMPLOYERS' LIABILITY ACT.

Employers' Liability Act of Porto Rico—Remedy not Exclusive.
    The remedy afforded by the Porto Rican Employers' Liability Act, approved March 1, 1902 (§§ 916 to 927, Comp. Stats. & Codes of

St. Amand v. Sureries de Saint Jean.

Porto Rico), is not exclusive, but supplemental to the remedy provided by §§ 1803, 1804, et seq., of the Civil Code.

Opinion filed February 1, 1916.

_____

*Messrs. Francis & Soto* for plaintiff.

*Messrs. Herminio Diaz Navarro* and *Henry C. Molina* (relying largely upon the brief of Hartzell & Rodriguez Serra in another case) for defendant.

HAMILTON, Judge, delivered the following opinion:

The complaint in this case was drawn expressly under §§ 1803 and 1804 of the Civil Code of Porto Rico, and the demurrer sets up the failure to allege that notice was given the defendant of the accident complained of, in accordance with § 6 of the Employers' Liability Act, approved March 1, 1902. The sole question raised, therefore, is as to whether the employee injured in the course of his employment, in the case at bar, by the alleged explosion of an oxygen machine for soldering, must proceed under the Employers' Liability Act, or whether he can still bring suit under the negligence sections of the Civil Code.

1. The juridical history of Porto Rico shows that the Civil Code, after being *in fieri* and under debate since the famous Constitution of 1812, and particularly since the draft of 1851, was finally adopted in Spain in the year 1899, and in the same year was extended to Porto Rico, then a dependency of that country.

St. Amand v. Sureries de Saint Jean.

There was not, up to the adoption of this Code, any special Employers' Liability Act in Spain or Porto Rico. The duties of employers was defined by what are known as §§ 1803 and 1804 of the Civil Code. What was the law before that time is not material. The Spanish Civil Code was enacted long after the Code Napoleon of 1804, and they had many points in common, sometimes due to direct adoption, sometimes to the common source of the jurisprudence. The provisions of the Code Napoleon on the subject are found in §§ 1382–1384, as follows:

"1382. Every action of man whatsoever which occasions injury to another, binds him through whose fault it happened to reparation thereof.

"1383. Every one is responsible for the damage of which he is the cause, not only by his own act, but also by his negligence or by his imprudence.

"1384. A person is responsible not only for the injury which is caused by his own act, but also for that which is caused by the act of persons for whom he is bound to answer, or by things which he has had under his care.

"The father, and the mother after the decease of her husband, are responsible for the injury caused by their children being minors and residing with them; masters and trustees, for the injury caused by their servants and managers in the functions in which they have employed them; . . ."

It will be observed that this lacks the limitations of the Spanish Civil Code, and makes the master liable for all injuries by servants in the line of their employment. It is held now in France, as well as in Italy, Quebec, and other civil-law jurisdictions, that the rule as to nonliability of the employer to an employee for the acts of a fellow servant does not prevail. La-

St. Amand v. Sureries de Saint Jean.

batt, Mast. & S. § 890. We have been cited to no law or decision in Spain on the subject, and a careful examination of the Jurisprudencia Civil and the Diccionario Razonado of Escriche does not show anything material upon the subject one way or the other. This is probably due to the fact that manufactures and similar industries were not as active in Spain as in England and some other countries. It is true that on January 30, 1900, there was enacted in Spain what somewhat corresponds to the Employers' Liability Act, under the name of Accidents of Labor, which, with its amendments, has given rise to considerable litigation. Escriche Diccionario Sup. s. v. Trabajo. 130 Jur. Civ. p. 134, Sentencia 20, April 18, 1914. This law, however, was subsequent to the American War, and had no effect on Porto Rico. The subject is not mentioned in Pantoja's Repertorio or index of the collection of reports known as the Jurisprudencia Civil, published as late as 1887, except under the head of Daños y Perjuicios under the general provisions of the law on the subject of negligence. Even in 1860 enterprises (*empresas*) connected with transportation were responsible for damages caused by their negligence, 5 Jur. Civ. 265,—a case, however, which refers to contracts of freight, and not employees.

The legal situation in Porto Rico, of course, was the same as in Spain, and thus, up to the late American War with Spain, the relation of employer and employee was governed by the general provisions of the Civil Code, under which it would seem, as in France, there was no exception on account of the acts of a fellow servant.

2. The American occupation did not, under international law, disturb civil rights and obligations, and the Civil Code, with certain amendments made by the military authorities, was

respected and held as continued in force.   After civil government was granted to Porto Rico by the Foraker Act of April 12, 1900, the legislature which was authorized by that act made a revision of the Spanish Civil Code, and on March 1, 1902, adopted this Revised Code.   On the same day there was adopted the act known as the Employers' Liability Act, on the American, not Spanish, model, which has continued in force, with some amendments not material to this case.

3. The question is raised by the demurrer whether this Employers' Liability Act repealed the Civil Code *pro tanto*, or whether the two co-exist?   It is set up that the local supreme court has in the case of Natal v. Bartolomey, 14 P. R. R. 476, declared that the Revised Civil Code is subsequent to the Employers' Liability Act, and therefore coexists with it.   There is no doubt that a statute as construed by the highest court of the state should generally determine the rights of the parties and control the decision of the case in the Federal court.   The construction of a statute by such a state court forms a rule of decision for the Federal court.   Illinois C. R. Co. v. Illinois, 163 U. S. 142, 41 L. ed. 107, 16 Sup. Ct. Rep. 1096.   This is sustained by a long line of decisions, and originally grew out of the principle declared in Revised Statutes, § 914.   The Federal court has even gone so far as to recall a contrary decision if it remains within that court's control, in deference to a later decision of a state court.   Southern R. Co. v. North Carolina Corp. Commission, 99 Fed. 162.   Such decisions are binding when the question relates to local statute, and not general commercial law.   Raimond v. Terrebonne, 132 U. S. 192, 33 L. ed. 309, 10 Sup. Ct. Rep. 57.   There can be no question as to this principle.

4. The question, however, is whether there has been such a

St. Amand v. Sureries de Saint Jean.

decision in the local court. The Natal Case cited seems to adopt the contention of the appellant in the case, but it is rather a remark *arguendo* than a decision upon an issue raised. We can hardly concur in the reason mentioned. The Civil Code was not adopted in 1902. It had been in force in Porto Rico for many years before that time, and, properly speaking, it was only the amendments which were adopted March 1, 1902, although these amendments were expressed in the form of a revision of that Code. The adoption of an Employers' Liability Act on the same day raises a different question. The law not recognizing a fraction of a day, it would seem that the Employers' Liability Act is rather to be considered one of the amendments of the Civil Code than that the two are to be considered as coexisting and furnishing two laws for the same subject. The decision of the local court, therefore, is not, under these circumstances, binding upon this court, and the question will be considered *de novo*.

5. The employers' liability legislation originated in England after the decision of the case of Wilson v. Merry, L. R. 1 H. L. Sc. App. Cas. 326, 19 L. T. N. S. 30, 19 Eng. Rul. Cas. 132, in 1868, and other cases which were based upon the unpopular fellow-servant rule. This rule grew out of the condition at common law wherein an employee was considered as having no claim against the employer for what might have been done by another employee working in the same service. After prolonged agitation, Parliament in 1880 enacted a law which by its terms "might be cited as the Employers' Liability Act," and its main object was to abolish the defense of fellow servant. Porto Rico adopted her act in 1902, and seems to have taken it from the Massachusetts and Colorado statutes, with certain changes. The

St. Amand v. Sureries de Saint Jean.

Massachusetts act gives the same right to an employee for compensation and remedy against the employer as if the employee had not been in the service of the employer. This effectually abolishes the fellow-servant doctrine. These words do not occur in the Porto Rico statute, and it is argued that the fellow-servant doctrine, therefore, was not abolished. The point is, however, probably not material in this case. There is no question that the fellow-servant doctrine does not obtain under the civil law. Labatt, Mast. & S. § 890. It seems that, while the doctrine had been forced upon Scotland, a civil-law country, it was repudiated in France, and the same view obtains in Italy and Switzerland, as well as in Quebec. The question is complicated as to Porto Rico by the decision of Brooks v. Central Sainte Jeanne, 228 U. S. 688, 57 L. ed. 1025, 33 Sup. Ct. Rep. 700, which assumes that it exists in Porto Rico. That case, however, is expressly said not to be brought under the act, and so the decision would not be conclusive. However, if the fellow-servant doctrine did not obtain in Porto Rico, it would make no difference that the Employers' Liability Act did not repeal it.

6. The other object of the Employers' Liability Act was to get rid of the doctrine of assumption of risk. Whether this existed in Porto Rico is also disputed. There have, however, been a number of cases in this court in which the doctrine is assumed, if not decided. Reyes de Lopez v. Suc. de Sainte Jeanne, in this court, 7 Porto Rico Fed. Rep. 647, April 10, 1915, and citations. And this may be without holding that the other doctrine as to fellow servant ever existed in Porto Rico. It would seem almost a necessity of the case that a person entering into any employment assumes the usual risks of that employment as a part of his contract of service until the legislature

St. Amand v. Sureries de Saint Jean.

should establish a different rule. The Spanish rule, at least since the act of 1900, is that the employer (patrono) is liable excepting only if the accident is due to act of God (fuerza mayor extraña). Law 1900, art. 2. And injury to a painter of the hull of a ship from lumber dropped by stevedores is not such *force majeure*. Sentencia 18, April 30, 1914, 128 Jur. Civ. 176.

"Considering that in conformity with the precepts and the spirit of the law of January 30, 1900, this Supreme Tribunal has held that the liability of the employers for accidents which may happen to employees while in the performance of their duties is limited to the acts executed by the latter natural for such performance, without excepting such acts as may emanate from the professional risk, that is to say, the one inherent to each class of work, but such liability cannot be extended to those which may happen on account of *force majeure* foreign to it, and not subject thereby to the measure of precaution which the employer should adopt, or those which may supervene by reason of the employee's own negligence, constituting actual foolhardiness on his part, entirely foreign to his functions."

Sentencia 95, Nov. 7, 1905, 102 Jur. Civ. 537.

The Spanish rule on the subject of *force majeure* does not quite correspond to the common-law expression "act of God." The Spanish law so strictly limits the exception to the employer's liability to matters extraneous to the employment that there is even a decision that the owner of a ship is responsible to the widow of a seaman for the loss of her husband in a shipwreck over which the shipowner had not the slightest control. Sentencia 47, Supreme Court of Spain, April 25, 1913, 127 Jur. Civ. 298.

7. The decisions under the Law of Accidents of Work in Spain indicate that the remedy thereby given is considered exclusive. In fact this is the purport of § 16 of that act. "That the violation of article 16 of the Employers' Act in relation with articles 1902 and 1903 of the Civil Code should not be taken into account, because, as article 16 provides that claims for damages for accidents not comprised within its provisions are subject to the provisions of the Civil Code, if those which occurred in the suit were on account of accidents in the works, it is evident that its determination does not lie within the precepts of the common law." Sentencia 82, Supreme Court of Spain, Jan. 18, 1910, 115 Jur. Civ. 421.

The mode of expression in Spanish decisions is different from that in American and English. The form grows out of the emphasis laid in Spanish jurisprudence upon the governmental features of the law rather than the individual rights of the parties to the suit. Thus, it is said: "Considering that in the judgment herein appealed there have not been committed the violations imputed in assignments 1 and 4 of the appeal, because articles 6, 16, and 1090 of the Civil Code, cited in that connection, refer to the case in which the principles thereof should be applied as supplementary legislation, in the absence of an especial law specifically applicable, and inasmuch as the trial court has made the express declaration that the fog and condition of the sea were the proximate cause of the shipwreck and death of the employee, which gave rise to the present suit, the only article strictly applicable is article 2 of the Special Law of January 30, 1900, relative to Accidents in Works, and not the Civil Code, because the former law, with reference to the case at bar, does not present any obscurities nor deficiencies such

as should be corrected with the precepts of the Code, as sought for in the two assignments in question, the said court having held that said cause constitutes notoriously an accident in the works, or trade in which the master of the wrecked ship was engaged."

Sentencia 186, Supreme Court of Spain, December 28, 1906, 105 Jur. Civ. 1051.

8. The exclusiveness of the remedy in Spain, however, grows out of the provisions and nature of Spanish law. In England the contrary rule holds. The Employers' Liability Statute represents the result of a conflict of thought, and is a compromise between two contending schemes of legislation. The main object of the act was to place masters who do not superintend their works personally upon the same footing of responsibility with those who do. The right of the employee to maintain an action under this statute, therefore, may be greater or may be less than at common law. The law is to be construed in furtherance of the benefit intended by the legislation, as expressed by the Master of the Rolls Brett, and the same judge as Lord Esher afterwards expressed the thought as requiring a liberal construction in favor of the workman, in Walsh v. Whiteley, L. R. 21 Q. B. Div. 371, 57 L. J. Q. B. N. S. 586, 36 Week. Rep. 876, 53 J. P. 38. Such is the construction in the United States. Mobile & B. R. Co. v. Holborn, 84 Ala. 133, 4 So. 146, 13 Am. Neg. Cas. 125. It is therefore a remedial statute. Hornsby v. Eddy, 5 C. C. A. 560, 12 U. S. App. 404, 56 Fed. 461.

9. A consequence of this view of the law is that in England and in the United States a servant is not precluded by the provisions of these statutes from recovering damages in a common-law action if the circumstances are such as would have enabled

him to maintain an action before it was passed. Ryalls v. Mechanics' Mills, 150 Mass. 190, 5 L.R.A. 667, 22 N. E. 766, 15 Am. Neg. Cas. 552. This has been settled in several later Massachusetts cases. 2 Labatt, Mast. & S. § 664, p. 1949. Indeed, it is sometimes allowed to join causes of action under the statute and at common law. Ibid. § 734, p. 2070.

The Porto Rican Act being largely taken from the Massachusetts statute, as that was from the English, and not from the Spanish, it would seem that the better practice would be to consider that the Employers' Liability Act is supplemental to the Civil Code, and not exclusive of the remedy originally lying under the Code. Whether the Code remedy is as beneficial as the statutory remedy, is of course a different question, which does not at present arise.

It follows, therefore, that the demurrer calling for a recital of notice in the complaint must be overruled. No such notice is required in a proceeding under the Code.

It is so ordered.